BAKER, Respondent, vs. STERN, Appellant.

*October 19—November 8, 1927.*

*Trusts: Massachusetts or business trust: Validity: Public policy: Perpetuities: Accumulation of rents: Persons in being able to terminate trust: Assignability of certificates: Spendthrift statute.*

1. The general plan of a business or so-called Massachusetts trust, under which the trustee was to hold title to the fee and to the lease of realty in trust for the purpose of paying holders of trust certificates a specified sum annually, and from any excess in its hands retire the certificates, and after such retirement distribute the rent, and, in case of the sale of the property, the proceeds of sale to the holders of ultimate title certificates, is not contrary to public policy, in view of sec. 226.14, Stats. (ch. 431, Laws of 1923). [No broad statement can be made, however, and the validity of each plan must be tested by applicable rules of law.]   p. 261.

2. The trust here construed does not violate the rules against perpetuities and relating to the suspension of the power of alienation set forth in sec. 230.14, Stats., and sec. 230.15 as amended by ch. 341 of the Laws of 1927, as the parties to the transaction, although numerous, may at any time join in an absolute conveyance of the trust estate.   pp. 263, 264.

3. The fact that the trust does not prescribe any definite time for its termination and is not by its terms limited to a life or lives in being and thirty years thereafter, does not violate sub. (5), sec. 231.11, Stats., as the limitations prescribed by that section apply only when future estates are created, or accumulation of rents and profits or their disposition provided for, which are contrary to other sections of the statutes.   pp. 264–268.

4. Sec. 230.36, Stats., providing that the disposition of the rents and profits of land received subsequent to the execution of a

trust shall be governed by the rules relating to future estates in land, is not contravened by the trust under consideration, because the agreement may be terminated at any time by persons in being, and thereby the disposition of the rents and profits come to an end.   p. 268.

5. While in a technical sense the certificate holders are beneficiaries, their real relation to the transaction is more nearly that of purchasers.   The fact that by their terms the certificates are assignable does not render the trust invalid, as sec. 231.19, Stats., known as a spendthrift statute, which prohibits the beneficiary of a trust for the receipt of rents and profits of land from assigning or otherwise disposing of such interest, is not applicable to business trusts.   pp. 269, 270.

APPEAL from an order of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge.   *Affirmed.*

Validity of a business trust.   The complaint is as follows:

"1. The plaintiff states that on or about the 24th day of September, 1927, plaintiff and defendant entered into a valid and binding contract by the terms of which plaintiff contracted and agreed to buy, and the defendant contracted and agreed to sell, the interests of the defendant in and to the following described property in Milwaukee county, Wisconsin, to wit:   [Description of property, (a), (b), (c), and (d)] ; which said interests in said premises were so contracted to be bought and sold as aforesaid, for the purchase price and sum of one million one hundred thousand dollars ($1,100,000) to be paid in cash at the time of the delivery of deed of conveyance and/or proper assignments of said interests in said premises, and the balance of said purchase price to be paid in the following manner, to wit:   At the time of and as a part of the consummation of said contract and the transfer to plaintiff herein of said interests in said property, said plaintiff to have said interests in said property conveyed to a trustee, which said trustee shall thereupon execute certain certificates of equitable ownership of said interests in said premises, and shall deliver to defendant herein a five-sixteenth. (5-16) portion of the total issue of said certificates, which shall be received by defendant as payment in full of the balance of said purchase price.

"2. That said contract further provides that the general

Baker v. Stern, 194 Wis. 233.

form and details of such certificates of equitable ownership should be left to the judgment and decision of the plaintiff, provided, however, that said interests in said premises should be conveyed or transferred to a trustee to be selected by plaintiff, which said trustee should issue said certificates of equitable ownership in two forms, one form thereof to be known and designated as 'Land trust certificates' and one form thereof to be known and designated as 'Ultimate title certificates,' which said trustee should have control and management of said interests in said premises until said trustee should acquire such land trust certificates by purchase or otherwise. That such trustee should issue such certificates, together with a declaration of trust defining the terms of both such trust and such certificates. That the holders of such land trust certificates should be entitled to receive from the income of said interests in said premises the total sum of eighty thousand and 00-100 ($80,000) dollars per annum, prorated among such holders, with the obligation upon plaintiff to deposit with said trustee a sum sufficient, which added to the income provided for in said lease to said Water-Grand Holding Company until May 1, 1932, to equal eighty thousand and 00-100 ($80,000) dollars per annum, to said last named date, which deposit should be made in cash or securities approved by said trustee (in which latter case the securities to be sold from time to time to meet such deficiency) at the election of the plaintiff; and provided further that such declaration of trust and certificates should be valid in all respects under the laws of the state of Wisconsin, that they should not violate the rule against perpetuities, and that they should be assignable, reassignable, transferable and retransferable by proper indorsements upon such certificates and the transfer or reissuance thereof by such trustee.

"3. The plaintiff further states that he has fully complied with the provisions of said contract, which said contract is hereto attached, marked Exhibit 'A,' and made a part hereof as though specifically set out in full herein, and has tendered to the defendant one million one hundred thousand and 00-100 ($1,100,000) dollars in cash and also certificates of equitable ownership to be delivered to defendant coincidentally with the transfer from defendant of said interests

in said premises, which said certificates of equitable owner-
ship and declaration of trust conform in all respects to all
the terms and provisions of said contract, which said dec-
laration of trust is in words and figures as follows, to wit:

"AGREEMENT AND DECLARATION OF TRUST.

"Agreement and declaration of trust, dated for conven-
ience September 1, 1927, but actually executed on the ——
day of ——, 1927 (hereinafter sometimes called the 'Dec-
laration'), between First Wisconsin Trust Company, a cor-
poration organized and existing under the laws of the state
of Wisconsin, of Milwaukee, Wisconsin, as trustee (herein-
after sometimes called 'Trustee'), party of the first part,
and such persons, partnerships, associations and/or corpo-
rations as may become parties hereto by the acceptance of
certificates of equitable ownership issued hereunder (herein-
after sometimes called 'Beneficiaries'), parties of the second
part, witnesseth:

"That the parties do hereby, in consideration of their
mutual covenants, make the following agreement and dec-
laration of trust with respect to the premises hereinafter
described:

"*Article I.*

"The trustee hereby declares that it holds and will hold
as trustee for the use and benefit of all present and future
holders of the certificates of equitable ownership issued
hereunder (such certificates being of two kinds, one known
as 'Land trust certificates,' and the other known as 'Ultimate
title certificates,' as hereinafter described), the title to the
premises acquired by the trustee by deed and assignments
from City Center Realty Company, a corporation organized
and existing under the laws of the state of Wisconsin, cover-
ing the following interests in the following described prop-
erty, to wit: [Description of property, (1), (2).] The
interest of the trustee in said premises is hereinafter some-
times referred to as the 'Trust estate.'

"Said premises are subject to a certain indenture of lease,
dated March 28, 1927, by and between City Center Realty
Company, a corporation, as lessor, and Water-Grand Hold-
ing Company, a corporation, as lessee, filed for record in the
office of the register of deeds of Milwaukee county, Wis-
consin, on the 1st day of April, 1927, as Instrument No.

1508814, and recorded in said office in record 1173 of Deeds, page 287 and following (said indenture of lease being here-inafter sometimes referred to as the 'Lease'), to which lease and record thereof reference is hereby made for all of the terms and conditions thereof, which said lease, among other things, provides as follows:

"(a) The term of said lease upon said lots 10, 11, and 12 is for a period of ninety-nine (99) years, commencing on April 1, 1927, and ending March 31, A. D. 2026, and the term thereof upon said lot 9 is for a period of ninety-eight (98) years and eleven (11) months, commencing on the 1st day of May, 1927, and ending on the 31st day of March, A. D. 2026.

"(b) The lessee agrees to pay to the lessor or its suc-cessors in interest or assigns the sum of four thousand one hundred sixty-six and 67-100 ($4,166.67) dollars upon the execution of said lease as rent for said lots numbered 10, 11, and 12, for the period commencing April 1, 1927, and ending April 30, 1927; the sum of fifty thousand five hundred and 00-100 ($50,500) dollars for the term commencing May 1, 1927, and ending April 30, 1928, payable in equal quarterly instalments of twelve thou-sand six hundred twenty-five and 00-100 ($12,625) dollars each, in payments on the 1st day of the months of May, August, November, and February, during said period; the sum of seventy-five thousand five hundred and 00-100 ($75,500) dollars per year for the term commencing May 1, 1928, and ending April 30, 1932, payable in equal quar-terly instalments of eighteen thousand and eight hundred seventy-five and 00-100 ($18,875) dollars each, in advance on the first day of each of the months of May, August, November, and February, during said four-year period; the sum of eighty-three thousand and 00-100 ($83,000) dollars per year for the term commencing May 1, 1932, and ending April 30, 1942, payable in equal quarterly instalments of twenty thousand seven hundred fifty and 00-100 ($20,750) dollars each, in advance on the first day of each of the months of May, August, November, and February, during said ten-year period; the sum of ninety thousand five hun-dred and 00-100 ($90,500) dollars per year for the balance of the demised term, commencing May 1, 1942, and ending March 31, 2026, payable in equal quarterly instalments of

twenty-two thousand six hundred twenty-five and 00-100 ($22,625) dollars each, in advance on the first day of each of the months of May, August, November, and February, during said period of eighty-three years and eleven months.

"In addition thereto, said lessee agrees to comply with and perform all the terms, covenants, and provisions in said lease covering lot 9, from said Argola Corporation to said City Center Realty Company, including the payment of the full rental thereunder.

"(c) The lessee also covenants and agrees that during the term of said lease the lessee will pay all water rates, and all taxes, charges, and assessments, general and special, ordinary and extraordinary, of every nature and kind whatsoever, levied, assessed, or imposed after the year 1926 and during the continuance of said lease upon the land or premises thereby demised, and upon any and all buildings, or improvements of any kind thereon, or which may after the date thereof and before the expiration of the term thereof be erected or placed thereon, whether such tax, rate, or assessment shall be for city, town, county, state, federal, or any other purposes whatsoever, said lessee thereby covenanting to pay taxes and assessments upon the real estate as well as upon the improvements thereon.

*"Article II.*

"The equitable ownership and beneficial interest in the trust estate is divided into sixteen hundred (1,600) indivisible equal shares, which shares shall be evidenced by certificates referred to and designated as 'Land trust certificates,' and said trust estate is likewise divided into thirty-two hundred (3,200) indivisible equal shares, which shares shall be evidenced by certificates, being referred to and designated as 'Ultimate title certificates,' which said certificates are in substantially the following form, varying, however, as to the respective dates, numbers, number of shares, and names of beneficiaries, to wit:

"(Form of Land Trust Certificates.)

"No. ——.                    Interest : ——1600th.
"Land trust certificate of equitable ownership in the Empire Building Site, in Milwaukee, Wisconsin.

"This certifies that —— —— is the owner of —— sixteen-hundredth (—— 1600th) of the beneficial inter-

est in a certain property located at the northeast corner of Wisconsin avenue and West Water street, in Milwaukee, Wisconsin, the title to which is held by First Wisconsin Trust Company, a corporation, of Milwaukee, Wisconsin, as trustee (hereinafter sometimes referred to as the trustee), first for the benefit of the holder or holders of this certificate and of similar land trust certificates issued or to be issued by the trustee to evidence ownership of said beneficial interest in said property so held by it in trust, and secondly for the benefit of the holder or holders of certain 'Ultimate title certificates' issued or to be issued by the trustee. All of said certificates are issued or are to be issued under and in pursuance of an agreement and declaration of trust, in which said property is specifically described, dated September 1, 1927, between the trustee as party of the first part, and such persons, partnerships, associations, and/or corporations as may become parties thereto by the acceptance of certificates of equitable ownership (either of like tenor herewith or of the kind known as 'Ultimate title certificates') in the trust thereby created, which agreement and declaration of trust (hereinafter sometimes referred to as the declaration) is of record in the office of the register of deeds of Milwaukee county, Wisconsin, at Milwaukee, to which declaration reference is hereby made for a statement of the rights of the holders of this certificate, and of all other certificates (including said 'Ultimate title certificates') issued or to be issued under the declaration, in said property, and the terms and conditions of said trust.

"The trustee agrees that the first days of May, August, November, and February, in each year, it will pay to the registered holder of this certificate as registered on the trustee's transfer books, said holder's *pro rata* share of the net proceeds which may be derived from the rental of the property described in the declaration and constituting the trust estate, up to and including but not in excess of the sum of twelve and 50-100 ($12.50) dollars per quarter upon each share, or a total of fifty dollars ($50) per year, from the date hereof, upon each share, until such time as the trust be terminated or this certificate purchased by the trustee in accordance with the terms of the declaration (any deficiency to be made up as soon as funds are available applicable thereto), less any federal, state, or other income

tax which the trustee has paid or withheld or is required to pay or withhold for or on behalf of said holder, and that upon any sale of said property and termination of the trust it will pay to said registered holder hereof, out of the net proceeds of such sale, said holder's *pro rata* share of said net proceeds up to and including but not in excess of the sum of one thousand ten and 00-100 ($1,010) dollars per share, together with such additional sums as may be necessary to make the total payments to the holder of this certificate, or his, their, or its assigns, be at the rate of fifty and 00-100 ($50) dollars per year upon each share from the date of this certificate to the date of such payment, all as provided in the declaration.

"Whenever in the declaration or in this certificate the trustee is obligated to pay or distribute any sum of money, it is understood that all such obligations are undertaken by it in its trust capacity only and not personally, and that such payments and distributions are to be made only out of such funds as the trustee has in its hands available therefor.

"The property hereinbefore and in the declaration described is leased to Water-Grand Holding Company, a corporation, by a lease dated March 28, 1927, upon lots 10, 11, and 12 for a term of ninety-nine (99) years, commencing on April 1, 1927, and ending March 31, A. D. 2026, and upon said lot 9 for a term commencing on the 1st day of May, 1927, and ending on the 31st day of March, A. D. 2026, which lease was filed for record in the office of the register of deeds of Milwaukee county, Wisconsin, on the 1st day of April, 1927, as Instrument No. 1508814, and recorded in said office in record 1173 of Deeds, page 287 and following.

"All amounts accruing from said payments in excess of an amount equal to twelve and 50-100 ($12.50) dollars per quarter year in respect to each share evidenced by 'Land trust certificate' actually outstanding shall be held, used, and disposed of as provided in the declaration. The equitable interest represented by this certificate is subject to optional purchase by the trustee, upon call, as provided in the declaration, at the amount of one thousand ten and 00-100 ($1,010) dollars per share.

"The holder of this certificate, by the acceptance hereof, expressly assents to all the terms and conditions of the dec-

laration and becomes a party thereto as fully to all intents and purposes as if said holder had signed the declaration.

"Subject to the terms and conditions of the declaration, this certificate and the interest represented thereby (but no fractional part of a single share thereof) may be assigned and transferred by the holder hereof in person or by duly authorized attorney, upon surrender of this certificate, duly executed for transfer, for notation of such transfer upon the books of the trustee, and the transferee shall, by accepting this certificate, or any certificate which may be issued in place hereof, become a party to the declaration and be bound thereby and entitled to all rights thereunder.

"In witness whereof, First Wisconsin Trust Company, of Milwaukee, Wisconsin, has caused these presents to be signed in its corporate name, by its president or vice-president, and its corporate seal to be hereto affixed, attested by its secretary or assistant secretary, this ―― day of ――, 19―.                    . FIRST WISCONSIN TRUST COMPANY,
                    "By ―― ――, President.
"Attest: ―― ――, Secretary.
"Registered: First Wisconsin Trust Company,
          "By ―― ――, Trust Officer, Registrar of Certificates."

(Form of assignment, Form of acknowledgment where assignor is an individual, Form of acknowledgment where assignor is a corporation, Form of acknowledgment where assignor is acting in a representative capacity, and Note, omitted.)

          "(Form of Ultimate Title Certificates.)
"No. ――.                    Interest :―3200th.
"Ultimate title certificate of equitable ownership in the
          Empire Building Site, in Milwaukee, Wisconsin.

"This certifies that ―― ―― is the owner of ―― thirty-two hundredths (―― 3200th) of the beneficial interest in a certain property located at the northeast corner of Wisconsin avenue and West Water street, in Milwaukee, Wisconsin, the title to which is held by First Wisconsin Trust Company, a corporation, of Milwaukee, Wisconsin, as trustee (hereinafter sometimes referred to as the trustee), first for the benefit of the holders of certain land trust certificate issued or to be issued by the trustee to evidence the present owner-

ship of said beneficial interest in said property so held by it in trust, and secondly for the benefit of the holder or holders of this ultimate title certificate and of similar ultimate title certificates issued or to be issued by the trustee. All of said certificates are issued or are to be issued under and in pursuance of an agreement and declaration of trust, in which said property is specifically described, dated September 1, 1927, between the trustee as party of the first part, and such persons, partnerships, associations, and/or corporations as may become parties thereto by the acceptance of said certificates of equitable ownership (either of the kind known as 'Land trust certificates' or of like tenor herewith), in the trust thereby created, which agreement and declaration of trust (hereinafter sometimes referred to as the declaration) is of record in the office of the register of deeds of Milwaukee county, Wisconsin, at Milwaukee, to which declaration reference is hereby made for a statement of the rights of the holders of this certificate, and of all other certificates (including said 'Land trust certificates') issued or to be issued under the declaration, in said property, and the terms and conditions of said trust.

"The rights of the holder of this ultimate title certificate are subject to the rights of the holders of a series of sixteen hundred (1,600) shares evidenced by land trust certificates, issued or to be issued by the trustee and representing the present equitable ownership and beneficial interest in said property. The registered holder of each share evidenced by land trust certificates is entitled to receive one sixteen-hundredth (1-1600th) of the net proceeds which may be derived from the rental of the property described in the declaration, and constituting the trust estate, up to and including but not in excess of the sum of twelve and 50-100 ($12.50) dollars per quarter year, or a total of fifty and 00-100 ($50) dollars per year, until such time as the trust be terminated or said certificates purchased by the trustee in accordance with the terms of the declaration (any deficiency to be made up as soon as funds are available applicable thereto), and upon any sale of said property and termination of the trust, the registered holder of each share evidenced by said land trust certificates is entitled to receive, out of the net proceeds of such sale, one sixteen-hundredth (1-1600th) of said net

proceeds, up to and including but not in excess of the sum of one thousand ten and 00-100 ($1,010) dollars, together with such additional sum as may be necessary to make the total payments to each of the holders of said land trust certificates, or his, their, or its assigns, be at the rate of fifty and 00-100 ($50) dollars per year for each share from the respective dates of said certificates to the date of payment, all as provided in the declaration.

"The property hereinbefore and in the declaration described is leased to Water-Grand Holding Company, a corporation, by a certain lease dated March 28, 1927, upon lots 10, 11, and 12 for a term of ninety-nine years, commencing on April 1, 1927, and ending March 31, A. D. 2026, and upon said lot 9 for a term commencing on the 1st day of May, 1927, and ending on the 31st day of March, A. D. 2026, which lease was filed for record in the office of the register of deeds of Milwaukee county, Wisconsin, on the 1st day of April, 1927, as Instrument No. 1508814, and recorded in said office in record 1173 of Deeds, page 287 and following.

"All net amounts received from said payments in excess of an amount equal to twelve and 50-100 ($12.50) dollars per quarter year in respect to each of said shares evidenced by land trust certificates actually outstanding, over and above the expenses of administering the trust, including any taxes, charges, or other amounts paid or incurred by the trustee in such administration or for the protection of the trust estate, shall be used by the trustee for the purchase of said land trust certificates, as provided in the declaration.

"Until such time as all of said land trust certificates shall have been purchased by the trustee, no part of the income from the trust estate is distributable to the holder of this certificate or to the holders of any of the ultimate title certificates of which this is one. In the event of any sale of the property constituting the trust estate, then the net proceeds of such sale, after deducting the trustee's reasonable compensation, and all expenses paid or incurred by the trustee in making the sale, together with any other indebtedness or liabilities of the trust estate, shall be used to make the payments hereinbefore provided to the holders of all outstanding land trust certificates, and the balance of said proceeds, if any, shall be distributed by the trustee *pro rata*

among the registered holders of the outstanding ultimate title certificates of which this is one, all as provided in the declaration.

"From and after such time as all of said land trust certificates shall have been purchased by the trustee, the trustee will hold the property constituting the trust estate for the sole use and benefit of the holders of the ultimate title certificate of which this is one, and the trustee will, during the continuance of the trust, distribute on the first days of May, August, November, and February in each year to the registered holder of this certificate, as registered on the trustee's transfer books, said holder's *pro rata* share of the net proceeds which may be derived from the rental of said property, and upon any sale of said property and termination of the trust the trustee will pay to said registered holder hereof, out of the net proceeds of such sale, said holder's *pro rata* share of said net proceeds, all as provided in the declaration.

"Whenever in the declaration or in this certificate the trustee is obligated to pay or distribute any sum of money, it is understood that all such obligations are undertaken by it in its trust capacity only and not personally, and that such payments and distributions are to be made only out of such funds as the trustee has in its hands available therefor.

"The holder of this certificate, by the acceptance hereof, expressly assents to all the terms and conditions of the declaration and becomes a party thereto as fully to all intents and purposes as if said holder had signed the declaration.

"Subject to the terms and conditions of the declaration, this certificate and the interest represented thereby (but no fractional part of a single share thereof) may be assigned and transferred by the holder hereof in person or by duly authorized attorney, upon surrender of this certificate, duly executed for transfer, for notation of such transfer upon the books of the trustee, and the transferee shall, by accepting this certificate, or any certificate which may be issued in place hereof, become a party to the declaration and be bound thereby and entitled to all rights thereunder.

"In witness whereof, First Wisconsin Trust Company, of Milwaukee, Wisconsin, trustee, has caused these presents

to be signed by its corporate name, by its president or vice-president, and its corporate seal to be hereto affixed, attested by its secretary or assistant secretary, this —— day of ——, 19—.                      FIRST WISCONSIN TRUST COMPANY,
                                        "By —— ——, President.

"Attest: —— ——, Secretary.

"Registered: First Wisconsin Trust Company,
        "By —— ——, Trust Officer, Registrar of Certificates.

(Forms of Assignment, Acknowledgments, and Note, omitted.)

### *"Article III.*

"In case any certificate issued hereunder, whether the same be a land trust certificate or an ultimate title certificate, shall become mutilated, or shall be destroyed, stolen, or lost, the trustee may thereafter, in its discretion, issue in lieu thereof a new certificate representing the interest evidenced by such mutilated, destroyed, stolen, or lost certificate, in exchange and substitution for the certificate mutilated, upon cancellation thereof, or in lieu of and in exchange and substitution for the certificate destroyed, stolen, or lost, upon the registered holder filing with the trustee evidence satisfactory to the trustee that such certificate was destroyed, stolen, or lost, and of such holder's ownership thereof, and furnishing the trustee with indemnity satisfactory to it, and for the benefit of all interested parties.

### *"Article IV.*

"The trustee agrees that after paying the compensation of the trustee hereinafter provided to be paid, and any expenses of administering the trust, including any taxes, charges, or other amounts paid or incurred by the trustee in such administration, or for the protection of the trust estate, it will distribute among the registered holders of the land trust certificates as registered on the trustee's transfer books, so long as any of said land trust certificates are outstanding, said holders' *pro rata* shares of the net proceeds which may be derived from the rental of the property hereinbefore described and constituting the trust estate, up to and including but not in excess of the sum of twelve and 50-100 ($12.50) dollars per quarter year, or a total of fifty and 00-100 ($50)

dollars per year upon each share from the respective dates of said land trust certificates until such time as the trust be terminated or the respective certificates purchased by the trustee in accordance with the terms of this declaration (any deficiency to be made up as soon as funds are available in the hands of the trustee applicable thereto), less any federal, state, or other income tax which the trustee has paid or withheld, or is required to pay or withhold, for or on behalf of the holders of said certificates. Said distribution shall be made quarterly, on the first days of May, August, November, and February in each year, and such payment shall be made by check at par in New York or Chicago exchange, mailed to the registered holders of said land trust certificates as aforesaid, at their respective addresses as shown by the trustee's transfer books. Any such funds not collected by such certificate holders shall be held by the trustee without interest to the credit of such holders.

### "Article V.

"Said First Wisconsin Trust Company as trustee does acknowledge receipt of securities aggregating the face value of the difference between the aggregate amount of the rents due under said lease to April 30, 1932, and the aggregate amount at the rate of eighty thousand and 00-100 ($80,000) dollars per annum from the date of delivery hereof until said April 30, 1932, which said securities are held for the purpose of using as far as necessary to meet the payments to become due from time to time hereunder to the holders of the certificates prior to said April 30, 1932.

### "Article VI.

"All net amounts received by the trustee from the lessee under the lease hereinbefore referred to, in excess of an amount equal to twelve and 50-100 ($12.50) dollars per quarter year, in respect to each of the shares evidenced by land trust certificates actually outstanding (over and above the expenses of administering the trust, including any taxes, charges, or other amounts paid or incurred by the trustee in such administration, or for the protection of the trust estate), shall be held by the trustee without interest and without any obligation to invest said funds, and shall be used by the trustee for the purchase by it of outstanding

land trust certificates upon voluntary tenders thereof, or by call, if no such voluntary tenders be made, as hereinafter in this article provided.

"Whenever there shall be in the hands of the trustee one thousand ten and 00-100 ($1,010) dollars or more applicable to the purchase by the trustee of land trust certificates as hereinbefore provided, such money may be applied by the trustee to the voluntary purchase of land trust certificates obtainable upon tenders to it at prices not exceeding one thousand ten and 00-100 ($1,010) dollars for each share evidenced by land trust certificate so purchased (plus such additional sum as may be necessary to make the total annual payments to the holder be at the rate of fifty and 00-100 ($50) dollars per year per share to the date of purchase), and if not so obtainable, then to the call purchase of land trust certificates as hereinafter provided. The trustee may purchase land trust certificates for the purpose and at not exceeding the price aforesaid at public or private sale without the necessity of advertising and in such manner as it may deem proper.

"To the extent that funds applicable for the purchase by the trustee of land trust certificates upon voluntary tenders as aforesaid are not exhausted in the voluntary purchase of such certificates within fifteen (15) days after such sum or more shall be so available, the trustee shall devote such funds to the purchase of land trust certificates by call as follows:

"The trustee or one of its officers shall determine by lot, according to its or his absolute discretion, the serial numbers of land trust certificates to be purchased up to the amount for which funds are available, at the call purchase price of one thousand ten and 00-100 ($1,010) dollars per share, and the trustee shall thereupon give to the registered holders of the certificates so designated not less than fifteen (15) days' written notice, by mailing such notice, first class, postage paid, to such holders at their respective addresses, appearing on the transfer books of the trustee, of such call purchase of the equitable interests evidenced by the certificates so designated, and the date fixed for such purchase, and after the date so designated for the purchase of such certificates the holders of such certificates shall be entitled only to the

respective sums representing the call purchase price of said certificates and no more, and the holders of said certificates shall have no other or further interest in the trust estate in respect to the land trust certificates so called for purchase. Said sums representing the call purchase price of land trust certificates so called for payment shall be retained by the trustee for the benefit of the holders of the respective certificates without interest.

"Upon the call purchase by the trustee of any land trust certificate as herein provided, the holder of such certificate shall receive, in addition to the call purchase price, such sum as may be necessary to make the total annual payments to the holder be at the rate of fifty and 00-100 ($50) dollars per year upon each share to the date on which such certificate is called for payment.

### "Article VII.

"All shares of beneficial interest in the trust estate represented by land trust certificates purchased by the trustee voluntarily or by call as provided in article VI hereof, shall be deemed to have been purchased for and on behalf of the holders of the remaining land trust certificates still outstanding and the holders of the ultimate title certificates, until such time as all of said land trust certificates shall have been so called for purchase by the trustee.

"From and after the purchase of any of said shares of beneficial interest, evidenced by said land trust certificates as aforesaid, no further distribution of any kind shall be made by the trustee in respect to the shares so purchased.

"On the purchase of any such shares of beneficial interest, the trustee shall indorse upon the land trust certificates evidencing the shares so purchased, a statement substantially as follows:

" 'The ―― 1600 of the equitable ownership and beneficial interest in the property described in the declaration referred to in this certificate and evidenced by this certificate has been purchased by the trustee in pursuance of the provisions of the declaration.'

"The trustee shall thereafter retain all of such land trust certificates so purchased.  When the trustee shall have purchased all of said land trust certificates, said certificates shall be canceled.

## *"Article VIII.*

"In the event that the lessee shall make default in any of the provisions of the lease so that it shall become necessary, or in the opinion of the trustee advisable, for the trustee to terminate the same, the trustee shall give not less than fifteen (15) days' notice thereof to the beneficiaries (including the holders of the land trust certificates and the holders of the ultimate title certificates issued hereunder), by registered letter, mailed to their last addresses as shown on the transfer books of the trustee, such notice to be deemed commenced with the mailing of said letter, and shall request therein advice as to whether the property should be offered for sale or whether another lease thereof should be made, if possible. If the holders of not less than three fourths in interest of the outstanding land trust certificates and the holders of not less than three fourths in interest of the outstanding ultimate title certificates shall, within ten (10) days after the expiration of the period of notice above provided, notify the trustee in writing of a specified course which they desire taken by the trustee, the trustee shall endeavor, in its discretion, to comply with their wishes. In the event of the failure or neglect of the holders of not less than three fourths in interest of the outstanding land trust certificates and the holders of not less than three fourths in interest of the outstanding ultimate title certificates to specify a course of action which they desire taken by the trustee, within the period above provided, or, in the event the trustee shall find, after making reasonable efforts, that it is impracticable to comply with the expressed desire of said certificate holders, then the trustee shall have full authority to take such action with respect to selling, leasing, managing, operating, or otherwise disposing of said property as it may deem advisable and for the best interest of the beneficiaries, provided, however, that the trustee shall not sell the property held in trust without procuring the written consent of the holders of three fourths in interest of the outstanding land trust certificates and without procuring the written consent of the holders of three fourths in interest of the outstanding ultimate title certificates.

"In the event that upon a default on the part of the lessee under the terms of said lease the trustee shall not deem it

advisable to sell the trust estate but shall enter into a new lease or leases of the trust estate, then the net income received by the trustee from such new lease or leases shall be distributed among the holders of the land trust certificates then outstanding, up to and including but not in excess of the sum of twelve and 50-100 ($12.50) dollars per quarter year, or a total of fifty and 00-100 ($50) dollars per year per share as hereinbefore provided, and the surplus, if any, shall be applied for the purchase of outstanding equitable interests represented by land trust certificates as hereinbefore provided, until such time as all of said land trust certificates shall have been purchased by the trustee.

"In the event that no default be made on the part of the lessee, the trustee may sell and convey the property constituting the trust estate, provided some unexpected contingency or special emergency (as determined by the trustee) shall, in the judgment of the trustee, make a sale advisable, provided the holders of three fourths of the equitable interests evidenced by outstanding land trust certificates shall have consented in writing to such sale, and provided the holders of three fourths of the equitable interests evidenced by outstanding ultimate title certificates shall have consented in writing to such sale.

"Upon any sale of the property constituting the trust estate, the trust shall terminate and the trustee shall, out of the proceeds of such sale, pay the reasonable compensation of the trustee in making such sale, together with all expenses paid or incurred by the trustee in making the sale, and any other indebtedness or liabilities of the trust estate. Out of the net proceeds of such sale, the trustee shall pay to the registered holders of the land trust certificates then outstanding as registered on the trustee's transfer books, said holders' *pro rata* shares of said net proceeds, up to and including but not in excess of the sum of one thousand ten and 00-100 ($1,010) dollars for each share evidenced by land trust certificate then outstanding, together with such additional sums as may be necessary to make the total payments to the holders of said land trust certificates, or their assigns, be at the rate of fifty and 00-100 ($50) dollars per year per share from the respective dates of such land trust certificates to the date of such payment. The surplus, if

any, shall be distributed by the trustee ratably among the registered holders of the outstanding ultimate title certificates issued hereunder as registered on the trustee's transfer books.

"Notice of any such distribution shall be given by registered letter, mailed to the respective beneficiaries at their several addresses as shown on the transfer books of the trustee. If, after such notice has been given as aforesaid, the holder or holders of any outstanding certificates (whether land trust certificates or ultimate title certificates) shall fail or neglect to present the same at the time and place in said notice specified, the trustee shall place to the credit of each outstanding certificate the distributive share to which its holder is entitled, and the trustee shall be subject to no further liability and under no further duty to the beneficiary holding such certificate except to pay to said holder such distributive share (without interest), upon demand, and the surrender of said certificate. The trustee shall not be required to pay interest upon any fund so credited.

"Upon any sale by the trustee of the property constituting the trust estate, the purchaser shall be under no obligation to ascertain whether or not the holders of the requisite number of equitable shares in the trust estate evidenced by land trust certificates and ultimate title certificates have consented to such sale or whether or not any other conditions or provisions herein contained have been complied with, but such purchaser may rely entirely upon the deed of the trustee and the recitals therein contained; nor shall the purchaser have any responsibility whatsoever with respect to the proper application of the purchase price by the trustee.

## "*Article IX*.

"From and after such time as all of the equitable shares in the trust estate, evidenced by land trust certificates, shall have been purchased by the trustee, the trustee shall hold the property constituting the trust estate for the sole use and benefit of the holders of the equitable shares in the trust estate evidenced by ultimate title certificates, and the trustee will, during the continuance of the trust, distribute on the first days of May, August, November, and February in each year to the registered holders of such ultimate title

certificates as registered on the trustee's transfer books, said holders' equal *pro rata* shares of the net proceeds which may be derived from the rental of said property.

"From and after such time as all of the equitable interests in the trust estate, evidenced by land trust certificates, shall have been purchased by the trustee, the trustee shall have power to sell and convey the property constituting the trust estate with the written consent or upon the written request of the holders of fifty per cent. in interest of the outstanding ultimate title certificates, provided, however, that if the holders of fifty per cent. of the outstanding ultimate title certificates shall request, in writing, the sale of the property constituting the trust estate and the trustee shall be of the opinion that such sale is not advisable from the standpoint of the beneficiaries, the trustee shall cause an appraisal of said property to be made by three disinterested appraisers engaged in the real-estate business in Milwaukee county, Wisconsin, and the trustee shall not be obligated to make any sale of said property unless the purchase price shall equal three fourths of the appraised value of said property as determined by said appraisers.

"Upon any sale of the property constituting the trust estate after the time when all of the equitable interests in the trust estate evidenced by land trust certificates shall have been purchased by the trustee, the trustee shall distribute the entire net proceeds of such sale to the registered holders of the ultimate title certificates as registered on the trustee's transfer books, *pro rata*. Notice of such distribution shall be given by registered letter, in the manner hereinbefore specified in article VIII hereof.

## *"Article X.*

"No beneficiary shall have as such any legal title to the trust property, real or personal, held by the trustee, his interest being equitable only, and he shall have no right to call for any partition of the trust estate during the continuance of the trust, any and all such rights being waived by the beneficiaries by their acceptance of the land trust certificates and / or ultimate title certificates issued hereunder. No transfer by operation of law of the interests of a beneficiary during the continuance of this trust shall operate to termi-

nate the trust, nor shall such transfer alone entitle the legal representative of a deceased beneficiary to an accounting or to take any action in the courts or otherwise against the trust estate or the trustee.

"Notwithstanding any transfer by operation of law of the interest, or any part thereof, of a beneficiary as aforesaid, the trustee shall be fully protected in paying and accounting to the personal representatives of any deceased beneficiary with respect to all matters arising under this trust.

### "Article XI.

"No assessment shall ever be made upon the beneficiaries, and the trustee shall have no power to bind the beneficiaries personally, and in every written contract made by the trustee reference shall be made to this instrument, and the person or corporation contracting with the trustee shall look only to the funds and property of the trust for payment under such contract, or for the payment of any debt, note, judgment, or decree, or of any money that may otherwise become due and payable by reason of the failure on the part of the trustee to perform such contract in whole or in part, or for any other cause; and neither the trustee nor the beneficiaries, present or future, shall, in any event, be personally liable therefor.

### "Article XII.

"The trustee shall keep a register of the names and interests of the beneficiaries hereunder, and proper transfer books, and books of account showing the receipts and disbursements of the trust estate. Such books of account, but not the register of names and interests or transfer books, shall at all reasonable times be open to the inspection of any beneficiary or his personal representatives.

"Land trust certificates and/or ultimate title certificates (but no fractional part of a single share) may be assigned and transferred by the holder or holders thereof, in person, or by attorney duly authorized, and upon presentation to the trustee of any such certificate duly executed for transfer, the trustee will execute to the transferee a new certificate representing the share or shares of equitable ownership in the trust estate so transferred, and such transferee shall, by accepting such certificate so assigned to him or any new

certificate issued in place thereof, become a party to the declaration and be bound thereby and entitled to all of the rights hereunder.   No such transfer, however, shall be binding upon the trustee until such new certificate shall be issued and notation of such transfer made upon the books of the trustee.   All expense incident thereto shall be borne by the holder.

### *"Article XIII.*

"The trustee does not warrant its title as owner of the premises hereinbefore described as the trust estate, or make any representations with reference thereto, nor does it warrant the validity of the lease, nor of any other lease of said premises which may hereafter be made, nor guarantee the performance of the covenants thereof by the lessee or any lessees thereunder.   It undertakes only to exercise ordinary care in collecting the rentals derived from said premises and in distributing among the beneficiaries the net proceeds derived therefrom, or in carrying out any sale of said premises and distributing the proceeds among the beneficiaries, as the case may be.

"The trustee shall have the exclusive right to manage and control the trust estate as it may deem for the best interests of the beneficiaries, free from all control by the beneficiaries, as fully and to the same extent as though the trustee were the sole legal and equitable owner thereof, and shall not be subject to any obligations to the beneficiaries other than such as are expressly assumed hereunder.

"The trustee shall likewise have full and unrestricted power and authority to enter into, execute, and deliver any. agreements and instruments in writing modifying, amending, or supplementing the lease, if and when, in the sole and absolute discretion of the trustee, it shall appear wise, expedient, or proper so to do, provided, however, that no modification of said lease shall be made which shall have the effect of reducing the net rental paid by the lessee unless such modification shall be agreed to in writing by the holders of a majority in interest of the outstanding land trust certificates and by the holders of a majority in interest of the outstanding ultimate title certificates.

"The trustee shall have full power to compromise and set-

tle claims either in contract or tort made against it or against the proceeds derived from the trust estate.

"The trustee shall be protected in acting upon any notice, request, consent, affidavit, certificate, assignment, note, or other paper or document believed by it to be genuine and to be signed by the proper party.

"The trustee shall be protected in regarding as the owner and holder of any certificate, the person, partnership, association, and/or corporation appearing on the transfer books of the trustee as the holder of such certificate.

"First Wisconsin Trust Company, or any corporation or individual who may at any time be trustee hereunder, may own or acquire land trust certificates and/or ultimate title certificates to the same extent and with the same effect as if it or they were not trustees hereunder.

"The trustee shall be entitled to indemnity from the trust estate for any personal liability by it incurred in the administration of this trust, except such as may arise from its personal and wilful default.

"The trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of this trust so long as it acts in good faith; nor shall it be personally liable for the acts or omissions of any officer, agent, servant, or employee elected or appointed by or acting for it (reasonable care having been used in their selection), and it shall not be obliged to give any bond to secure the due performance of this trust by it.

"The trustee shall have the power, in the event that it should become necessary for it to provide funds to meet a temporary exigency arising in connection with the management of the trust estate, or to enable it to comply with any of the provisions of said lease, to make advances at reasonable or customary rates of interest and borrow money and give notes or other security therefor binding the assets of the trust, but not the trustee or beneficiaries personally, and to repay any advances so made or money borrowed out of the property constituting the trust estate, or the income therefrom.

"The trustee may advise with legal counsel, and any action under this trust agreement taken or suffered in good

faith by the trustee in accordance with the opinion of such counsel, shall be conclusive on the beneficiaries, and the trustee shall be fully protected in respect thereof.

"Any notice herein provided to be given by mail shall be deemed to have commenced at the time of depositing such notice, properly addressed and stamped, in the United States mail.

"Whenever in this instrument or in any land trust certificate or ultimate title certificate issued hereunder the trustee is obligated to pay or distribute any sum of money to the holders of such land trust certificates or ultimate title certificates, it is understood that all such obligations are undertaken by it in its trust capacity only and not personally, and that such payments and distributions are to be made only out of such funds as the trustee has in his hands available therefor.

*Article XIV* relates to compensation of trustee. (Omitted.)

*"Article XV.*

"In the event that the trustee or any successor hereafter appointed shall desire to relinquish the trust evidenced by this agreement, the trustee shall give four weeks' notice thereof to all of the beneficiaries, either by registered letter sent to their last addresses as shown by the trustee's transfer books, such notice to be deemed to commence with the mailing of such letter, or by publication once a week for four weeks in a newspaper published and of general circulation in the city of Milwaukee, Wisconsin. If the holders of not less than three fourths in interest of the outstanding land trust certificates and the holders of not less than three fourths in interest of the outstanding ultimate title certificates shall, within fifteen (15) days after the expiration of the period of notice above provided, request the trustee in writing to convey the trust estate to a specified trustee who is willing to accept the trust, the trustee shall, upon the making of such conveyance and upon accounting for all funds which have previously come into its possession, be discharged from further liability. In the event of the failure or neglect of the holders of not less than three fourths in interest of the outstanding land trust certificates and the holders of not less

than three fourths in interest of the outstanding ultimate
title certificates to express their choice of a successor within
the period above provided, the trustee may select any bank
or trust company qualified to act, situated in Milwaukee,
Wisconsin, as successor trustee, or the trustee may request
the circuit court of Milwaukee county, Wisconsin, to select
such successor.   Upon conveying the trust estate to a suc-
cessor trustee appointed by either of the methods above
provided, and upon accounting for all funds which have
previously come into its possession, the trustee shall be
discharged from further liability.

"In the event of the consolidation or merger of First Wis-
consin Trust Company, or of any successor trustee, with any
other corporation, such consolidated corporation shall suc-
ceed· to the title and rights of the original trustee, subject
to the terms and conditions of this agreement.   The purchase
of the assets and the assumption of the liabilities of the
trustee shall be treated as a merger or consolidation as pro-
vided for in this article.

*"Article XVI.*

"The term 'trustee' shall be deemed to include First Wis-
consin Trust Company, Trustee, or any successor which
may hereafter be appointed under any of the provisions of
this instrument.

*"Article XVII.*

"By the acceptance of any certificate issued hereunder, the
original or any successive holder shall be deemed to assent
to all of the provisions contained in this trust agreement.

*"Article XVIII.*

"Wherever in this declaration reference is made to the
'outstanding certificates,' or 'the holders in interest of the
certificates,' or equivalent designations, the same shall be
deemed to mean and apply to the holders of the certificates
outstanding and shall not include any certificates or shares
acquired by the trustee through purchase, voluntary or by
call, or called for purchase, under the provisions hereof.

"In witness whereof, said First Wisconsin Trust Com-
pany has caused these presents to be signed in its corporate
name by its president or vice-president and its corporate seal

to be hereunto affixed, attested by its secretary or assistant secretary, as of the day and year first above written.

"FIRST WISCONSIN TRUST COMPANY,

"By —— ——, President.

"Attest: —— ——, Secretary.

(Form of acknowledgment omitted.)

"4. The forms of said land trust certificates and ultimate title certificates respectively, and the forms of assignment and acknowledgment of each of said certificates, are as hereinbefore set out in said form of agreement and declaration of trust.

"5. The plaintiff further states that he is still ready, willing, and able to carry out and perform his part of said contract, in the manner hereinbefore set forth, and hereby again offers so to do, but that the defendant, without legal cause or excuse, has refused, and does now refuse, to carry out said contract or to perform his part of said contract and has refused and still refuses to convey to plaintiff said interests in said premises as the defendant is by the terms of said contract bound to do, and that plaintiff has no adequate remedy at law.

"Wherefore, the plaintiff demands judgment against the defendant as follows:

"(a) That said declaration of trust and certificates of equitable ownership, including both land trust certificates and ultimate title certificates, be adjudged and declared valid under the laws of Wisconsin, in all respects; that said certificates are assignable and reassignable, transferable and retransferable by proper indorsement upon such certificates, and that said declaration of trust and said certificates do not violate the laws of the state of Wisconsin against perpetuities or restraints upon alienation;

"(b) That said contract be ordered specifically enforced and carried out;

"(c) That the defendant be required to accept said land trust certificates so tendered by plaintiff as full compliance with the terms and requirements of said contract relating to the issuance and delivery of certificates of equitable ownership;

"(d) That the defendant be ordered and adjudged to

convey to plaintiff, by sufficient conveyance, said interests in said premises;

"(e) That plaintiff have such further orders and decrees as in equity and good conscience plaintiff is entitled to have; and

"(f) That plaintiff have and recover his costs herein laid out and expended."

(Exhibit 'A,' Contract for sale of real estate, omitted.)

The defendant demurred to the complaint—

"for the reason that it appears upon the face of said complaint that the same does not state facts sufficient to constitute a cause of action, for the following reasons:

"1. Because the declaration of trust and the certificates of equitable ownership set out and described in plaintiff's complaint violate the terms and conditions of said contract alleged by plaintiff.

"2. Because said declaration of trust and certificates of equitable ownership are, and each of them is, invalid under the laws of the state of Wisconsin in the following particulars:

"(a) Because said declaration and certificates violate the rule against perpetuities and/or the rule limiting the restrictions upon alienation of property, as said rules are set forth in section 230.15 of the Wisconsin Statutes, as amended and modified by the Laws of Wisconsin, 1927.

"(b) Because the said declaration of trust and said certificates of equitable ownership of said interests in said premises set out in plaintiff's complaint constitute dispositions of rents and profits of the lands to accrue and be received at a time subsequent to the execution of the instrument creating such disposition, and are contrary to the rules respecting future estates in land, as set forth in chapter 230 of the Wisconsin Statutes, and especially in section 230.36 of said Statutes.

"(c) Because said declaration of trust and said certificates of equitable ownership are not assignable and/or transferable, and because any attempt to assign or transfer said certificates of equitable ownership, or any of them, would be invalid and void and in direct violation of the provisions of

section 231.19 of the Wisconsin Statutes, which section provides that no person beneficially interested in a trust for the receipt of the rents and profits of lands can assign or in any manner dispose of such interest, but that the rights and interests of every person for whose benefit a trust for the payment of a sum in gross is created are assignable.

"Wherefore defendant prays the judgment of the court."

From an order overruling the demurrer the defendant appeals.

The cause was submitted for the appellant on the brief of *Bottum, Hudnall, Lecher, McNamara & Michael* of Milwaukee, and for the respondent on the briefs of *Ryland, Boys, Stinson, Mag & Thomson* of Kansas City and *Lines, Spooner & Quarles* and *Benjamin Poss* of Milwaukee, attorneys, and *James Quarles* and *Roy B. Thomson,* of counsel.

ROSENBERRY, J.    This court is called upon in this case for the first time to deal with some of the legal aspects of a business trust, a business device which had its development principally in Massachusetts and is consequently frequently referred to as a Massachusetts trust.    The business trust is of comparatively recent origin and courts in other states have been called upon to consider it with relation to taxation, incorporation statutes, bankruptcy laws, laws regulating the sale of securities commonly called "blue sky laws," rights of creditors, and liabilities of the beneficiaries or certificate holders.    As respects their fundamental characteristics, business trusts have almost uniformly been held to be valid. They have been held to be *quasi*-corporations, *Hoey v. Coleman* (1891), 46 Fed. 221; joint-stock companies, *Hart v. Seymour* (1893), 147 Ill. 598, 35 N. E. 246; partnerships, *Clagett v. Kilbourne* (1861), 1 Black (66 U. S.) 346, 17 Lawy. Ed. 213, *Whitman v. Porter* (1871), 107 Mass. 522; both joint-stock company and partnership, *Spotswood v. Morris* (1906), 12 Idaho, 360, 85 Pac. 1094; a pure trust, *Crocker v. Malley* (1919), 249 U. S. 223, 39 Sup. Ct. 270,

*Williams v. Milton* (1913), 215 Mass. 1, 102 N. E. 355;
a distinct legal entity, *Forgan v. Mackie* (1925), 232 Mich.
476, 205 N. W. 600; not to be a distinct legal entity, *Guth-
mann v. Adco Dry S. B. Co.* (1924), 232 Ill. App. 327;
to be within the bankruptcy act, *Burk-Waggoner Oil
Asso. v. Hopkins* (1925), 269 U. S. 110, 46 Sup. Ct.
48; not to be distinguishable from corporations, *Weber En-
gine Co. v. Alter* (1926), 120 Kan. 557, 245 Pac. 143, 46
A. L. R. 158. The authorities are collected and analyzed in
notes to 7 A. L. R. 612, 10 A. L. R. 887, 31 A. L. R. 851,
35 A. L. R. 502, 46 A. L. R. 169. Notes discussing the
application of "blue sky laws" to a Massachusetts trust are
to be found in 24 A. L. R. 529 and in 40 A. L. R. 1016.

We make these general observations for two reasons:
(1st) We are asked to hold that upon the allegations of fact
appearing in the complaint the contract should be specifically
enforced. If the contract is held to be specifically enforce-
able, it is necessarily held to be a valid contract in its
entirety. This involves the question of whether or not the
plan of the trust is in any of its aspects contrary to public
policy. In determining this question we have not had assist-
ance of counsel, but have reached the conclusion that a
general plan such as is disclosed by the allegations of the
complaint is not contrary to public policy. We reach this
conclusion more readily because business trusts, whether
existing under the laws of this or other states, are recog-
nized as being valid by legislative act. Regulations prescrib-
ing the conditions under which such organizations may
transact business in this state are found in sec. 226.14, Stats.
(ch. 431, Laws 1923). (2d) In view of the variety of plans
devised to meet varying situations arising in the business
world, no broad dogmatic statements can be made. Each
plan must be tested by applicable rules of law in order that
its nature and validity may be determined. Attention is
directed to the fact that what may be said in the course of the

opinion is specifically limited to the facts presented in this case and is not to be construed as a wholesale approval of any form of so-called business trusts which may be hereafter considered.

We are called upon to deal with the interpretation of statutes and decisions enacted and pronounced without having in contemplation a trust of the nature disclosed by the pleadings in this case. The particular grounds of invalidity urged against the trust agreement and the land trust certificates are, first, that the agreement and certificates violate the rule against perpetuities and the rule relating to the suspension of the power of alienation of property set forth in sec. 230.15 as amended by the Laws of 1927 (the amendment increased the period from two lives in being and twenty-one years thereafter to a life or lives in being and thirty years thereafter). The solution of this question requires a brief analysis of the plan. By the terms of the trust agreement the trustee is to hold the title to the fee and to the lease in trust for two purposes: (1) To pay the holders of land trust certificates $50 per year per share in quarterly payments, and from any excess fund in its hands to retire the land trust certificates in the manner provided. (2) Upon the retirement of the land trust certificates to distribute the rent, and in case of sale of the property the proceeds of the sale to the holders of the ultimate title certificates. By this plan two things are accomplished: first, the land trust certificate holder acquires an interest in the transaction (whether this interest is real estate or personal property we do not now decide) which is vendible, and the owners of the property may avail themselves of the funds derived from a transfer of that interest for present purposes without personal liability, the payment being secured solely upon the trust estate without the personal liability of any one; and second, in the event of a default as that term is defined in the trust instrument, a sale of the premises can be had, apparently without a right of redemption in any one (whether such

right if it exists is or may be cut off in the manner provided is not determined). No definite trust period is prescribed. Upon the facts appearing in the case it cannot be determined as a matter of calculation whether the land trust certificates will be retired in ten or fifty years or longer. The trust agreement provides a method whereby the trustee may be required to make a sale of the property and the trustee is authorized in certain contingencies to make sale.

Sec. 230.15, Stats. 1927, is as follows:

"The absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of a life or lives in being at the creation of the estate and thirty years thereafter, except in the single case mentioned in section 230.16 [contingent remainder in fee], and except when real estate is given, granted or devised to a charitable use or to literary or charitable corporations which shall have been organized under the laws of this state, for their sole use and benefit, or to any cemetery corporation, society or association."

Sec. 230.14 provides:

"Every future estate shall be void in its creation which shall suspend the absolute power of alienation for a longer period than is prescribed in this chapter; such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed."

The subject matter of these sections was thoroughly considered in *Becker v. Chester,* 115 Wis. 90, 106, 91 N. W. 87, 650. It was there held that "the power of alienation of realty is not suspended where there are living parties, however numerous, who have unitedly the entire ownership and may, presently, lawfully join in an absolute conveyance of the same." See, also, *Holmes v. Walter,* 118 Wis. 409, 95 N. W. 380; *Eggleston v. Swartz,* 145 Wis. 106, 129 N. W. 48.

While the parties to this transaction possibly may be very numerous, yet it is apparent that if the holders of the

land trust certificates and the ultimate title certificates and the trustee unite in a conveyance, which they may do at any time without violating the trust agreement, they can convey an absolute title to the trust estate. The arrangement, therefore, does not violate the statute forbidding the suspension of the power of alienation for a term longer than that prescribed.

The second contention made is that the trust is not by its terms limited upon a life or lives in being and thirty years thereafter and is therefore in violation of sub. (5) of sec. 231.11. Title XX of the Wisconsin Statutes is entitled "Real Property, and the Nature and Qualities of Estates Therein," and contains five chapters. Ch. 230 is entitled "Nature and Qualities of Estates in Real Property, and Restrictions on Alienation;" ch. 231, "Uses and Trusts;" ch. 232, "Powers;" ch. 233, "Dower and Curtesy;" ch. 234, "Landlords and Tenants and General Provisions."

Sec. 231.01 provides:

"Uses and trusts, except as authorized and modified in this chapter, are abolished; and every estate and interest in lands shall be deemed a legal right, cognizable as such in the courts of law, except when otherwise provided in these statutes."

The trust disclosed in the trust agreement in this case is no doubt one provided for by sub. (5) of sec. 231.11:

"Express trusts may be created for any or either of the following purposes: . . .

"(5) For the beneficial interests of any person or persons, when such trust is fully expressed and clearly defined upon the face of the instrument creating it, subject to the limitations as to time and the exceptions thereto relating to literary and charitable corporations prescribed in this title.

"(6) . . ."

The trust instrument in this case does not prescribe any definite time for the termination of the trust; the trust is not limited upon a life or lives in being and not more than

thirty years thereafter and is said, therefore, to be in violation of the provisions of sub. (5), sec. 231.11.

The language of this section first appears in title XV, ch. 57, of the Revised Statutes of 1849. Sec. 1 of ch. 57, R. S. 1849, is identical with sec. 231.01 already quoted except that the word "title" is used in the last line instead of "statutes."

Sec. 11 of ch. 57, R. S. 1849, provides:

"Express trusts may be created for any or either of the following purposes: . . .

"5. For the beneficial interest of any person or persons, when such trust is fully expressed and clearly defined upon the face of the instrument creating it, subject to the limitations as to time prescribed in this title."

By the revision of 1878 the words "and the exceptions thereto, relating to literary and charitable corporations," were inserted between the word "time" and the word "prescribed." Respecting the addition of these words the revisors said:

"In sec. 2081 [now sec. 231.11] words are inserted in the fifth subdivision to clearly indicate that the provisions apply to corporations, and to give perpetual trusts in aid of literary and charitable corporations, for reasons indicated in note to preceding chapter; and it is also to be observed that under the fourth subdivision a trust to accumulate rents and profits for such corporations may be created by reason of the change in the preceding chapter."

Respecting sec. 2039 (now sec. 230.15) the revisors said:

"Amendment is made to allow grants or devises in perpetuity to literary or charitable corporations. It is thought that this ought not to be extended to religious corporations, but left only to those which are formed for advancing literary or charitable ends. The decision in *Ruth v. Oberbrunner,* 40 Wis. 238, shows a defect in the law as it is, which is generally admitted to require amendment. We have endeavored to afford it without too great innovation. In that spirit, it is provided that corporations under our laws can

alone enjoy the benefit of such a grant, because they are with-in legislative control under the constitution, while they can readily be formed to possess all necessary powers for the full enjoyment of all the benefits which should follow such a pro-vision in the law."

*Ruth v. Oberbrunner,* 40 Wis. 238, involved the question of whether or not trusts for charitable purposes were abol-ished, and it was held in conformity with the weight of au-thority in the state of New York, from which the statute was taken, that they were abolished. The court said:

"Our statute contains a provision in regard to that class of trusts, not found in the statutes of that state. It is the fifth subdivision of sec. 11, and reads as follows: 'An express trust may be created for the beneficial interests of any person or persons, when such trust is fully expressed and clearly defined on the face of the instrument creating it, subject to the limitations as to time prescribed in this title.' It is at-tempted to sustain the devise under this provision; and it is apparent that if it can be upheld at all, it must be because it falls within or conforms to the requirements of this sub-division. Assuming, then, for the purposes of the case, that a trust to a charity may be created under the provision, it can only be so created upon the prescribed terms and limita-tions. And what are those conditions? The statute gives a distinct answer to the question. A trust for the beneficial in-terest of another is valid, 'when it is fully expressed and clearly defined upon the face of the instrument creating it,' and so limited as to time as not to violate the statute against perpetuities."

So much for the history of the section.

It is considered that the words "subject to the limitations as to time prescribed in this title" should be interpreted in the sense in which they were used in the Statutes of 1849, for the reason that the amendment engrafted upon the sec-tion by the revisors of 1878 was in the nature of an excep-tion. It is argued that sub. (5) should be construed as if it originally read: "for the beneficial interests of any person or persons when such trust is fully expressed and clearly

defined, provided it shall terminate within a period not longer than two lives in being," as the original statute was. This interpretation fails to take any account of the fact that the reference is to *limitations* as to time. In the original title there was not only a limitation as to future estates, but there was a limitation as to accumulations of rents and profits, sec. 37, ch. 56, R. S. 1849 (now sec. 230.38); also a limitation as to disposition of rents and profits of real estate, sec. 36, ch. 56, R. S. 1849 (now sec. 230.37).

In the title there are other provisions involving a time element. If the language of sub. (5) is to be held to fix the time within which a trust must be terminated and to refer to all of the limitations as to time contained in the title, then no trust could continue for a longer time than the shortest time limited by any provision contained in the title. The first subdivision of sec. 37, ch. 56, R. S. 1849, relating to accumulations of rents and profits, provides:

"If such accumulation be directed to commence on the creation of the estate out of which the rents and profits are to arise, it must be made for the benefit of one or more minors then in being, and terminate at the expiration of their minority." (Now sub. (1) of sec. 230.37.)

It is considered that to hold that no trust could be created for a longer time than that limited in this subdivision would put an unreasonable construction upon the statute. From the language of the statute as well as the comments of the revisors and the language of the court, it appears that no such limitation as that was intended; that the words in sub. (5), "subject to the limitations as to time prescribed in this title," merely import into sub. (5) the limitation as to the time during which the power of alienation may be suspended; the limitation of time as to the accumulation of rents and profits; the limitation of time prescribed for disposition of rents and profits; and other limitations, if any, which are contained in the title. The limitations prescribed

are applicable only when by the terms of the trust a future estate is created or the accumulation of rents and profits is provided for or a disposition of rents and profits is made or other provisions of the statute relating to estates are involved when a limitation as to time is made.

Under the terms of the trust agreement in this case we have no difficulty in holding that the power of alienation is not suspended in violation of the statute; nor does the trust agreement provide for the accumulation of rents and profits; nor does it contravene sec. 230.36, which provides:

"Disposition of the rents and profits of lands, to accrue and be received at any time subsequent to the execution of the instrument creating such disposition, shall be governed by the rules established in this chapter in relation to future estates in land."

The trust agreement provides for the disposition of rents and profits and is for that reason subject to the limitation contained in sec. 230.36. But applying the "rules established in this chapter in relation to future estates in land," we find that the disposition made by the trust agreement does not violate the statute because the trust may, under the terms of the trust agreement, be terminated at any time by persons in being, and with the termination of the trust the disposition of the rents and profits comes to an end. The rule of the section is not violated. As was said in *Holmes v. Walter,* 118 Wis. 409, 422, 95 N. W. 380:

"Again, since the will contains no prohibition, express or implied, against terminating the trust, and all parties that can be interested are *in esse,* when all are *sui juris* they can by uniting cause its termination, subject to the restraints contained in secs. 2089 and 2091, Stats. 1898. (Cases cited.) The mere fact that the trust is in terms perpetual does not affect it. That feature is not objectionable so long as it does not offend against the prohibition against suspending the absolute power of alienation."

It is further argued that because the certificates are by

their terms assignable they violate the provisions of the statute. Sec. 231.19 provides:

"No person beneficially interested in a trust for the receipt of the rents and profits of lands can assign or in any manner dispose of such interest; but the rights and interests of every person for whose benefit a trust for the payment of a sum in gross is created are assignable."

The trust agreement creates a trust for the disposition of rents and profits, the certificate holders are beneficially interested therein, and the payment to be made is not a sum in gross, and if the statute applies, the certificates are not assignable, under the provisions of sec. 231.19.

In determining the question presented by this contention the objects and purposes of the plan should be considered. While in a technical sense the holders of certificates may be beneficiaries, their real relation to the transaction is more nearly that of a purchaser. Upon the execution and delivery of the trust agreement the certificates are held by or for the benefit of the settlor and represent his interest in the property which has been transferred to the trustee. Any one gaining title thereafter to a certificate does so by gift or purchase and not by the terms of the trust instrument. In that aspect the rights of a holder of a certificate have little resemblance to the rights of a beneficiary under the terms of a non-business trust. The certificate holder of either class has a right to have the trust agreement carried out according to its terms; to that extent only is he a beneficiary of the trust. Manifestly, the statute was not enacted for the purpose of limiting the right of such a beneficiary to transfer his own property. The question was dealt with by the court of appeals in *Schenck v. Barnes,* 156 N. Y. 316, 50 N. E. 967. The applicable statute of the state of New York is identical with that of this state. The court said:

"The statute is obviously designed to assist the creators of trusts in protecting and caring for the beneficiaries who

are the natural objects of their solicitude and care, but it cannot be invoked by a debtor to protect a trust which he has created to serve in time of need as a refuge from his creditors."

In that case a person not indebted to any one had created a trust for his own benefit and the benefit of third persons; he subsequently incurred indebtedness and his creditors sought to reach his interest in the trust, and he invoked the statute of the state of New York which provides as does our statute that no person beneficially interested in a trust for the receipt of rents and profits in land could in any manner assign the same, and claimed that by reason thereof his interest was not subject to seizure and sale upon execution. The court said:

"A trust created by a debtor and under which he is the beneficiary is not affected by the provision of the Revised Statutes (1 R. S. p. 730, § 63) which prohibits a person beneficially interested in a trust for the receipt of the rents and profits of lands from assigning or disposing of the same.

"The policy of this statute is clear, when applied to trusts created by third parties, but is without force when the debtor creates the trust."

The reasoning applies to the holder of a certificate whether he be the creator of the trust or a purchaser from the creator. The statute in question is often referred to as a spendthrift statute and was intended to protect beneficiaries against their own improvident acts whereby the purpose of the trust might be defeated. It can have no application where the beneficiary is in reality a purchaser and not the object of the care and solicitude of the settlor. It is therefore considered that the fact that the certificates are assignable does not make them invalid because in violation of the provisions of sec. 231.19.

*By the Court.*—The order appealed from is affirmed.