HODGKISS, APPELLANT, v. NORTHLAND PETROLEUM CONSOLIDATED ET AL., RESPONDENTS.

(No. 7,610.)

(Submitted January 9, 1937. Decided March 31, 1937.)

[57 Pac. (2d) 811.]

330

*Mr. S. J. Rigney,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. Lew. L. Callaway* and *Mr. Horace W. Judson,* for Respondents, submitted a brief; *Mr. Callaway* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This action was brought to quiet title to a tract of land in Glacier county. On June 28, 1921, plaintiff and his wife executed an oil and gas lease to the defendant trust. The lease was in the usual form and was to continue for five years, with the right to further prolong its existence by the payment each year of $1 as rental unless commercial production was encountered before that time. The lease recited $1 as the considera-

tion and reserved to the grantors 12½ per cent. of the oil and gas produced and saved from the land. At the same time the plaintiff and his wife executed a mineral deed granting a one-quarter interest ''in and to all of the oil, gas and other minerals in the lands'' described in the complaint. On demand of Hodgkiss in the year 1931 the lease was released of record.

The complaint was in the usual short form in an action to quiet title. The answer denied all of the allegations found in the complaint, except the allegations with reference to the trust, which were admitted, and admitted that the defendants claimed title to one-fourth of all the oil and gas and minerals in the lands involved. Defendants affirmatively alleged their claim of paramount title under the mineral deed, laches, and estoppel, and that the action is barred by the provisions of section 9015, Revised Codes.

Reply was filed to all of the affirmative defenses, alleging that the deed was void in that the grantee named was neither a natural nor artificial person, and therefore no grantee. It is further alleged that the deed was void ''because it was not given for value or any consideration whatever, and that at the time the said lease and mineral deed were made and executed, it was agreed and understood by and between the said parties that the defendants would at once proceed to explore and drill either on the land herein described or on some other lands on which the defendants held oil and gas leases and that continuous development would be had and taken to the end that the said defendants would validate their leases and do all that would be necessary to secure to the members of the defendants association property rights in said leases that might thereafter become of value.''

It is then alleged that the defendants failed to validate the oil and gas lease and never validated, directly or indirectly, any oil and gas leases by them received; that the oil and gas lease and the mineral deed were part of the same transaction, and that plaintiff believed the release of the oil and gas lease operated as a cancellation of the mineral deed; that the defend-

ants obtained the mineral deed under the misrepresentation of the facts alleged, which we have either summarized or quoted at length; that all of the oil and gas leases obtained by the defendants were canceled by them or have been barred by the lapse of time. It is further alleged that the mineral deed is void "for the reason that it was acquired by fraud and misrepresentation as theretofore alleged"; that the defendants have released certain deeds and assignments of royalty identical with the mineral deed, and that these releases were made without consideration and without the consent of the beneficial owners of units in the defendant association or trust.

The cause was tried before the court without a jury. The trial court made special findings of fact, all of which are in favor of the defendants and against the plaintiff. Judgment was entered in conformity with the findings. The appeal is from the judgment. Error is assigned in the making of numerous of the findings of fact and one of the conclusions of law, and also in the making and entering of the judgment.

The court by its findings found that the mineral deed was good and valid and had been given for a good consideration. This finding and many others are challenged by specifications of error, but we think it unnecessary to notice the other specifications, as all of counsel's argument is directed in the main to this one finding, and in view of our conclusion it is unnecessary to discuss the other specifications.

It is first contended that the mineral deed was void in that the grantee was a fictitious person and therefore incapable of taking title to real estate. The only grantee named was the "Northland Petroleum Consolidated." Plaintiff, as an exhibit to his reply, set forth an agreement or declaration of trust between certain parties, wherein they adopted or designated the name of the grantee in the mineral deed as the name of this trust created by the agreement and declaration. Trustees were appointed under the trust agreement, but their names do not appear in this conveyance.

The rule with reference to contracts so far as individuals are concerned, entering into agreements under an assumed name, is very well stated in 19 R. C. L. 1333, as follows: "Again, a contract or obligation may be entered into by a person by any name he may choose to assume. All that the law looks to is the identity of the individual, and, when that is ascertained and clearly established, the act will be binding on him and on others." This rule appears to be universal and is illustrated by the note setting forth many cases in L. R. A. 1915D (n. s.) 983. We concede the rule that a conveyance to a fictitious person is void for want of proper parties. Where, however, a contract is made with an identified individual under an assumed name, all are bound by the contract. This distinction was recognized in the case of *Scanlan* v. *Grimmer,* 71 Minn. 351, 74 N. W. 146, 70 Am. St. Rep. 326, and *Wilson* v. *White,* 84 Cal. 239, 24 Pac. 114, wherein many authorities holding in accord with this view are reviewed at length. There appears to be no dissent among the adjudicated cases from this rule. It would appear to follow logically that if an individual may contract under an assumed name, no sound reason exists why a group should not likewise so enter into contracts. In Sears on Trust Estates & Business Companies, second edition, 374, it is said: "Strictly speaking, it may be said that a trust cannot adopt a name. It has no power to do anything implying either volition or dissent. It is merely property with a characteristic attached to or inhering in it. But trustees, who represent it, are individuals *sui juris,* and they may adopt a name or names for transacting business, executing contracts, or suing and being sued." (See, also, *Pease* v. *Pease,* 35 Conn. 131, 148, 95 Am. Dec. 225; *Carlisle* v. *People's Bank,* 122 Ala. 446, 26 So. 115.) A deed is sufficient if the grantee can be identified by extrinsic evidence. (*York* v. *Stone,* 178 Wash. 280, 34 Pac. (2d) 911.) The trustees of the defendant trust were all parties to the trust agreement. They were identified persons. Accordingly, we hold that the mineral deed was not void for want of a proper grantee.

Next it is urged that the deed was either without consideration or that the consideration for it failed. The defendants offered the deed in evidence. The deed was in writing, and therefore presumptive evidence of a consideration. (Sec. 7512, Rev. Codes.) The burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it (sec. 7513; *Lee* v. *Laughery*, 55 Mont. 238, 175 Pac. 873; *Bielenberg* v. *Higgins*, 85 Mont. 69, 277 Pac. 636), and that presumption, if uncontradicted, is satisfactory. (*Dackich* v. *Barich*, 37 Mont. 490, 97 Pac. 931.)

This rule is not changed when applied to the facts of this case by reason of the provisions of section 7895, Revised Codes, relating to transactions between trustees and beneficiaries. That section by its express terms applies after the relation of trustee and beneficiary has been created. Here the transactions under consideration were those whereby the relation of trustee and beneficiary was created.

The rule is that inadequacy of consideration, standing alone, is not a sufficient ground for refusing to enforce an agreement. (*Pederson* v. *Thoeny*, 88 Mont. 569, 295 Pac. 250.)

The plaintiff testified that he received nothing for the execution of the oil and gas lease and the mineral deed. In his testimony, however, he later admitted that it was agreed at the time of their execution that he was to receive a certificate of interest of one unit in the trust. He also admitted receiving a memorandum stating that he was entitled to receive such a unit. He admitted that he had never made demand for the certificate of interest or unit, and that it was offered to him at the time he secured the release when he refused to accept it; it was also tendered to him in court. Evidence also appears in the record that the certificate was offered to him at an earlier date. The declaration of trust discloses that one thousand units might be issued at a par value of $100. The record is silent as to how many of these units or certificates of interest were ever issued.

It apparently was the theory of the pleader in the reply filed by plaintiff that the major consideration for these documents was the prospecting and development of the lands on which the defendants had oil and gas leases. It was recited in the declaration of trust at that time that the trust owned numerous other tracts of land under assignments of leases either in whole or in part, and that therefore, by reason of their failure to develop, the consideration for the lease and mineral deed failed.

Many authorities fail to recognize a distinction between want of consideration and failure of consideration; this court, however, has recognized the distinction. (*Sommer* v. *Wigen,* 103 Mont. 327, 62 Pac. (2d) 333.) Treating the pleading on behalf of plaintiff in his reply as a sufficient plea of failure of consideration, let us examine the proof to see whether the allegations of the reply were sustained. The plaintiff testified that the negotiations were conducted preliminary to the signing of the oil and gas lease and the mineral deed by one Hall, an agent of the trust or trustees. In response to an inquiry as to what statements were made by Hall before the signing of the instrument, plaintiff replied: "Mr. Hall said they are going to drill wells and develop the land and see if there is oil and gas on the land; that if they did not do so in five years, those leases would become null and void." Again, in response to a similar inquiry, he testified: "Mr. Hall said that the company agreed to drill wells; if they did not drill wells in five years leases would be no account and they went out of effect in five years time." This is the only testimony offered tending to prove what was referred to in the reply as an understanding or agreement for prospecting and development of the leased land. This proof falls short of showing any such understanding or agreement. After this proof had been offered, plaintiff sought, on direct examination of the witness Frisbee, who was the secretary of the trust, to elicit the fact that no development of the land had been performed by the defendants. Objection was interposed and sustained upon the ground that under the then present state of the proof, it was incompetent, irrelevant, and

immaterial. Until plaintiff first established the agreement which he alleged in his reply, the court very properly, in the exercise of its discretion in controlling the order of proof, sustained the objection. No testimony was offered as to the value of the unit or certificate of interest other than plaintiff's assertion that he did not think it had any value. He did not undertake to say, however, that the unit was not what he bargained for. There is no failure of consideration when one has received that which he intended to buy, although the thing bought should prove to be worthless. (*Simeon* v. *Klenze*, 66 Mont. 341, 213 Pac. 440.)

It is suggested that the unit or certificate of interest was practically worthless without development. Courts, however, must enforce contracts as made, not make new ones for the parties, no matter how unreasonable the terms may appear. (*Story Gold Dredging Co.* v. *Wilson*, 99 Mont. 347, 42 Pac. (2d) 1003.) When plaintiff failed to prove his alleged agreement as set forth in his reply, he failed to sustain his pleading of failure of consideration, and when it appeared from the proof that the defendant at all times recognized his right to the unit in that it was attempted to be delivered to him—in fact, tendered to him —plaintiff failed to sustain his plea of want of consideration. The burden was not on the defendants to show that the unit had some value. The burden was on the plaintiff to show that there was no consideration.

It is suggested that the proof discloses that plaintiff was defrauded. The only pleading of fraud was the bald statement that defendants made certain fraudulent misrepresentations. These misrepresentations referred to in the reply consist of the alleged understanding and agreement with reference to the prospecting and development of the land leased by the defendant trust. Plaintiff by his averments specifically refers to them. These representations or statements were not of existing facts, but were, according to the allegation, promises. Under subdivision 4 of section 7480, Revised Codes, a promise of such a character, in order to be actionable as fraudulent, must be

made without any intention of performing it. The pleading failed to disclose that the promise, if made as alleged, was made without such intention, and no attempt was made to prove what the defendants intended. Speaking of a similar condition in pleadings and proof, under the same subdivision of the statute, this court in the case of *Howe* v. *Messimer*, 84 Mont. 304, 275, Pac. 281, 283, said: "The allegations of the complaint and the testimony of the defendant go no further than to charge that the promise was not performed. Defendant was not, therefore, entitled to go to the jury on this defense of fraud. (*International Harvester Co.* v. *Merry*, 60 Mont. 498, 199 Pac. 704; *Cuckovich* v. *Buckovich*, 82 Mont. 1, 264 Pac. 930.)" Accordingly, both the pleading and the proof were wholly lacking to sustain a finding of fraud.

Also it is contended that the lease and mineral deed come ▆ within the purview of the provisions of section 7533, Revised Codes, reading as follows: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." This court has many times said that when contracts come within the provisions of this section, they are to be construed together. Plaintiff argues that when the lease was canceled, the mineral deed was in effect released; but if we concede that the statute is applicable, how fares the plaintiff? The mineral deed contains the statement that it is made subject to the lease in question. It also provides, however, that "in the event that the said above lease for any reason becomes cancelled or forfeited then and in that event" the interests of the respective parties are to be three-fourths to the plaintiff and one-fourth to the defendants in the oil, gas, and mineral, and they as well as all future rentals shall be thus owned. To adopt the construction contended for would be to eliminate these provisions entirely. The purpose of the construction of contracts is to give effect to the mutual intention of the parties (sec. 7527, Rev. Codes), and the language of a contract is to govern its interpretation if the language is clear and explicit (sec. 7529). The language of the

mineral deed clearly and unmistakably reveals the intention that the deed was not to become void if the lease became canceled or forfeited. This contention is therefore without merit.

It is suggested that the defendants in this case are without right to hold property by reason of the provisions of section 18 of Article XV of the Constitution. It is said that trusts of this character come within those provisions and are, therefore, subject to all of the statutory provisions relating to the organization and management of corporations. Some judicial authority tends to support this view. It is noteworthy that this constitutional provision has not been carried forward into our statutes. Among the authorities supporting this view is the case of *Reilly* v. *Clyne*, 27 Ariz. 432, 234 Pac. 35, 40 A. L. R. 1005. The constitutional provision there is identical with our own, but the Arizona statutes contain the same statutory provision as found in their Constitution. The Kansas court, in the case of *Home Lumber Co.* v. *Hopkins*, 107 Kan. 153, 190 Pac. 601, 10 A. L. R. 879, adopted the view in support of this contention, as did the Washington court in the case of *State ex rel. Range* v. *Hinkle*, 125 Wash. 581, 219 Pac. 41. In both of these cases, however, the court was construing the constitutional provision together with a statute commonly classified or referred to as the "Blue Sky Law." The Washington court again, in a later case, arrived at the same conclusion in the case of *State ex rel. Colvin* v. *Paine*, 137 Wash. 566, 243 Pac. 2, 247 Pac. 476, 46 A. L. R. 165, which was a quo warranto proceeding. That court, in the still later case of *Haynes* v. *Central Business Property Co.*, 140 Wash. 596, 249 Pac. 1057, said that, even in the light of these decisions, no one could assert that a common-law trust was illegal or complain of its assuming the exercise of corporate powers except the state, and observed that in both of these cases the state was an adverse party asserting the invalidity of the trust or association. All of these decisions overlook the fact that the constitutional provision by its own terms declares that the word "corporation" shall have a certain meaning as applied to the Article of the Constitution in which it is

found. Many courts from other jurisdictions having an identical constitutional provision have noted this distinction and said that the provisions of the Constitution apply no further than the Article to which it refers. They declare that the constitutional definition of a "corporation" does not extend to every statutory provision relative to corporations. (*Spotswood* v. *Morris*, 12 Idaho, 360, 85 Pac. 1094, 6 L. R. A. (n. s.) 665; *State* v. *Cosgrove*, 36 Idaho, 278, 210 Pac. 393; *Attorney General* v. *McVichie*, 138 Mich. 387, 101 N. W. 552; *Whitney Realty Co.* v. *Secretary of State*, 220 Mich. 234, 189 N. W. 1007; *People* v. *Coleman*, (Sup.) 5 N. Y. Supp. 394; *Strawberry Hill Land Corp.* v. *Starbuck*, 124 Va. 71, 97 S. E. 362; *Great Southern etc. Hotel Co.* v. *Jones*, 177 U. S. 449, 20 Sup. Ct. 690, 44 L. Ed. 842.)

If the framers of our Constitution had desired to have this definition extended beyond the scope of the Article to which it expressly refers, they could have done so by apt language. This they did not do. To say that because of this constitutional provision the trust here involved became a corporation in one breath, and in the next to say that it is not a corporation since it failed to comply with certain statutory provisions is not logical, to say the least. Accordingly, we hold the trust valid as against this contention.

It is urged in one of the dissenting opinions that certain of ▮▮▮ the provisions of the declaration of trust violate the statute prohibiting restraints on the power of alienation. (Secs. 6705, 6706, 6732 and 6733, Rev. Codes.) Under the terms of that document the trustees have the absolute power of alienation of all of the property of the trust at any time in their discretion. Although the trust might continue for the lives of the trustees and twenty years thereafter, at all times the absolute power of alienation resided in the trustees. If the rule against perpetuities obtains in this state, some questions of this character might arise, as the rule against perpetuities is directed towards the prevention of the vesting of estates at remote periods of time; but it is distinguished from statutes such as those

in question prohibiting the suspension of the power of alienation for a prescribed period. (*In re Murphy's Estate,* 99 Mont. 114, 43 Pac. (2d) 233.) In jurisdictions where the rule against perpetuities prevails, trusts of this character are held not to violate the rule. (*Hart* v. *Seymour,* 147 Ill. 598, 35 N. E. 246; *Howe* v. *Morse,* 174 Mass. 491, 55 N. E. 213; *Baker* v. *Stern,* 194 Wis. 233, 216 N. W. 147, 58 A. L. R. 462.)

Again it is said in one of the dissenting opinions that the ▮▮▮▮▮▮ conveyance to the trust by the plaintiff was void, as this property was not described in the declaration of trust. The property was accurately described in the conveyance to the trust. This conclusion is based on an attempted construction of sections 6783, 6784 and 6787. The construction, however, ignores section 7884, which declares the method by which voluntary trusts may be created. This section provides that it is subject to the provisions of section 6784. Hence all of the statutes must be construed together. These statutes for many years existed in identical form in California and were so construed by the courts of that state (*Lynch* v. *Rooney,* 112 Cal. 279, 44 Pac. 565), where an express trust was declared by a letter which contained no description of the land involved. All of the conditions of a trust need not be expressed in a single document. (*Root* v. *Kuhn,* 51 Cal. App. 600, 197 Pac. 150.) These decisions are in accord with the current of authority under similar statutes. (*Smith* v. *Hainline,* (Mo. Sup.) 253 S. W. 1049; *Ketcham* v. *Miller,* (Mo. Sup.) 37 S. W. (2d) 635; *Willig* v. *Friedberg,* 108 N. J. Eq., 17, 153 Atl. 535, 536; *Shive* v. *Hayes,* 132 Kan. 137, 294 Pac. 935.)

One of the dissenting members of the court condemns the transaction because the trustees did not comply with sections 4026 et seq., Revised Codes, commonly called the "Blue Sky Law." Whether they did or not cannot be determined from an examination of the pleadings, evidence, briefs, or arguments of counsel, outside of the record. In fact, no one other than this member of the court has assumed to state anything relative to the facts relating to compliance with this particular statute.

The presumption is that the law has been obeyed. (Sec. 10606, subd. 33, Rev. Codes.) The purpose of the statute is to prevent the sale of "blue sky" to the public, not to authorize courts to assume facts and thereby determine the rights of litigants by merely gazing into the "blue sky."

Upon the state of the record before us, the trial court correctly held that the mineral deed was valid and given for a consideration. It is therefore unnecessary to discuss the other specifications of error. Judgment affirmed.

ASSOCIATE JUSTICES STEWART and ANGSTMAN concur.

MR. JUSTICE MORRIS, dissenting:

On June 28, 1921, the plaintiff and his wife executed and delivered to L. I. Hall, an agent of the defendant trust, the oil and gas lease on the lands involved. The lease was to run for five years with the right to renew it year by year thereafter by the payment each year of a consideration of $1 unless oil or gas were developed in the meantime of commercial value. At the same time the plaintiff executed and delivered to Hall for the defendant a mineral deed conveying 25 per cent. of "all gas, oil and minerals" in the same land in the event the lease was allowed to lapse. The lands were not developed or exploited for oil or gas by the defendant either directly or indirectly and on March 7, 1931, at the request of the plaintiff, the lease was terminated and removed from the records.

The complaint contains the usual allegations essential in an action to quiet title. Defendant by answer set up four affirmative defenses to the complaint: (1) A copy of the mineral deed is attached as Exhibit A and made a part of the answer and title paramount to plaintiff's title is claimed thereunder; (2) that the plaintiff was guilty of laches in not beginning his action for fourteen years after the execution of the mineral deed; (3) that the plaintiff is estopped from denying the paramount title of the defendants to the oil, gas, and mineral in the lands involved by reason of the deed and the warranties contained

therein; (4) that plaintiff's action is barred by the provisions of section 9015, Revised Codes, the statute of limitations.

To the affirmative defenses thus set out in the answer the reply alleges (1) that the defendant trust is neither a natural nor artificial person under the laws of Montana, and therefore incapable of receiving title by such conveyance and for such reason the deed is void; (2) that the deed was given without consideration; (3) that the deed was obtained by misrepresentation and fraud; (4) that the mineral deed and lease, by being given at the same time, are parts of the same transaction and are to be taken and construed as one contract and that the intention of the parties, as shown by the instruments and as agreed upon at the time, was that the land would be speedily explored and exploited to determine whether there was any oil and gas thereunder. A similar reply was interposed to each of the four affirmative defenses.

The court took the matter under advisement and in due course made findings of fact substantially as follows:

1. That the Northland Petroleum Consolidated is a common-law or business trust.
2. That the individual defendants are the trustees thereof.
3. That the plaintiff executed and delivered to the defendant trust the mineral deed conveying a one-fourth interest in the oil, gas, and other minerals in the land involved and received a good and valuable consideration therefor.
4. That such one-fourth interest was purchased by the trustees of the defendant trust for the use and benefit of the unit holders and such trustees had a just legal and valid right to defend this action on behalf of parties in interest.
5. That the defendant trust, under the declaration of trust duly recorded in Glacier county, and pleaded herein, is an association having and exercising certain powers and privileges not possessed by individuals and is a corporation within the meaning of section 18, Article XV of the Constitution of Montana with the power to sue and be sued in all courts in like case as natural persons.

6. That the individual defendant trustees under the terms of the declaration of trust and provisions of law applicable had the right to assume a trade-name under which it might conduct its business.

7. That plaintiff in conveying the real estate involved dealt with the defendant as a legal entity, received a valuable consideration for such conveyance and is thereby estopped from denying the legal existence of the defendant trust.

8. That the plaintiff's action is barred by section 9015, Revised Codes, the statute of limitations.

9. That plaintiff is estopped to deny the paramount title of the defendant to the one-fourth interest in the oil, gas, and other minerals.

Plaintiff assigns error on findings numbered 3, 4, 5, 6, 7, and 8 and on the court's conclusions of law No. 1. Assignment No. 1 directed to the court's finding No. 3 and assignment 6 directed to finding 8 raises questions that should be determined in favor of the plaintiff. The other assignments give rise to questions on which the authorities are not in harmony but the weight of authority would lead to their determination generally in favor of the defendant, but they are not essential to the determination of this controversy on its merits.

Finding No. 3 is to the effect that the mineral deed was made and delivered to the defendant by the plaintiff and that the plaintiff received a good and valuable consideration therefor. The record shows the deed was made and delivered as found by the court, but there is not sufficient evidence in the record to support the finding that plaintiff received a good and valuable consideration. Plaintiff alleges and counsel contends that there was no consideration for the mineral deed and plaintiff testified that he received nothing for either the deed or lease. The deed recites the consideration of $1 the receipt of which is thereby acknowledged, and ''other valuable considerations.'' The other valuable considerations appear to consist of one ''Beneficial Interest'' in the trust, 1,000 of which were authorized issued of the par value of $100. The beneficial interest will be adverted

to later. There was a 12½ per cent. interest in the oil and gas reserved by plaintiff under the lease which might have resulted in additional consideration but the record does not show that there was any development or attempt to develop.

The rule denying the admission of parol evidence to vary the terms of a valid written instrument is not involved in the controversy. The deed was not acknowledged by the plaintiff and was not under seal when it was delivered to the defendant, but it was proved by the subscribing witness as provided by section 6922, Revised Codes, obviously for the purpose of recordation. Specific consideration need not be mentioned in a written contract (section 10606, subd. 39), but "In equity it has always been permissible to inquire into the consideration of a sealed instrument * * * (or any other). It is laid down in a number of cases that when the consideration for a promise wholly fails the promise is without consideration and unenforceable." (13 C. J. 315.) The consideration of $1 named in the deed was merely nominal, and not sufficient according to some authorities to support the contract. (*Great Western Oil Co.* v. *Carpenter,* 43 Tex. Civ. App. 229, 95 S. W. 57.)

As to the one "Beneficial Interest" as the "Other Valuable Consideration," named in the deed, the testimony as to the time when tender of this was made to the plaintiff is in sharp conflict. Witness Frisbee, secretary and trustee of the trust, testified the unit was tendered to plaintiff a number of times. Plaintiff testified it was not tendered until he demanded the release of the deed. A "unit" showing date of March 27, 1931, made out to plaintiff was received in evidence and it was tendered to him in open court at the hearing held in this action and refused. Whether it was ever legally tendered to plaintiff or not appears doubtful for the reason it was not tendered as required by the defendant's own rules as set out in the declaration of trust, and whether properly tendered or not is immaterial, as the record does not show the units of the defendant trust had any value, and being without value, of course, could not be any consideration for the deed. Section 3 of the declaration of

trust, after fixing the number and par value of the beneficial interests, how they should be transferred, providing for their registration, and other similar matters, then provides: "The Holder shall signify in writing that he is fully conversant with the terms of the Declaration of Trust, and also of the statements made in the first minutes of the Company, and he assents thereto." It is clear that there was no compliance with this provision of the declaration of trust and such provision, I think, was binding on all parties and consequently no legal offer of delivery of the beneficial interest was made to the plaintiff.

Even if it had been legally tendered to and accepted by plaintiff, the record does not show it had any value whatever for it does not appear that any of the lands held by the defendant under oil and gas leases were ever developed either directly or indirectly, and the only practical method proposed by the provisions of the declaration of trust by which any value could accrue to its "beneficial interest" was by drilling and exploiting the lands the trust controlled for oil and gas.

The defendant's witness, Frisbee, was asked by counsel for plaintiff if any of the oil and gas holdings of the trust had ever been developed by the trust. The court sustained an objection that such question was irrelevant and immaterial "under the present state of the proof." Unless the objection were on the ground that such question was improper on cross-examination, I think the ruling was error. Whether the lands were developed for oil and gas or not is not only material but important in the determination of this controversy. The question as to whether the trust owned any oil and gas leases "at this time" was objected to on the same ground and the objection sustained. If the trust now holds no oil and gas leases it tends to establish lack of good faith in carrying out the expressed purposes of the trust as set out in the declaration, and would tend to show that leases were obtained along with mineral deeds in the same lands, no development had and the transactions resulted in the lessor receiving nothing but the trust holding royalties that might be of value without the trust giving anything of value in return.

Such a situation carries a strong presumption of fraud. I think the court erred in sustaining the objection in each instance on the grounds given for the ruling. It is clearly obvious from the record that defendant never gave anything of substantial value for the deed, and consequently could not show any injury or damage to oppose or prevent the issuance of a decree declaring the deed void.

Adverting to the question of fraud, it is said with some reason that plaintiff's pleadings do not fairly raise an issue of fraud in accordance with the rule governing such a pleading as laid down by this court speaking through Chief Justice Brantly in *Buhler* v. *Loftus*, 53 Mont. 546, 165 Pac. 601, 604, where it was said: "In other words, in order to make out a case of fraud, the pleading must allege facts embodying the following essential elements: (1) That the defendant made a representation or statement, intending that plaintiff should act upon it; (2) that the representation was false; (3) that the plaintiff believed it; and (4) that he acted upon it to his damage. (*Butte Hardware Co.* v. *Knox*, 28 Mont. 111, 72 Pac. 301, and cases cited; *Power & Bro.* v. *Turner*, 37 Mont. 521, 97 Pac. 950, 952; *Ott* v. *Pace*, 43 Mont. 82, 115 Pac. 37; *Henry* v. *Continential B. & L. Assn.*, 156 Cal. 667, 105 Pac. 960; *Crocker* v. *Manley*, 164 Ill. 282, 45 N. E. 577, 56 Am. St. Rep. 196; *Southern Dev. Co.* v. *Silva*, 125 U. S. 247, 8 Sup. Ct. 881, 31 L. Ed. 678; 2 Pomeroy's Eq. Jur., sec. 878.)" But it was also said in that case that "whatever is necessarily implied in or is reasonably to be inferred from, an allegation, is to be taken as directly averred." And this rule of liberal construction has been applied in numerous cases by this court (*Grant* v. *Nihill*, 64 Mont. 420, 210 Pac. 914; *Gauss* v. *Trump*, 48 Mont. 92, 135 Pac. 910; *Grover* v. *Hines*, 66 Mont. 230, 213 Pac. 250; *Doane* v. *Marquisee*, 63 Mont. 166, 206 Pac. 426; *Wheeler & Motter Mercantile Co.* v. *Moon*, 49 Mont. 307, 141 Pac. 665; *Willoburn Ranch Co.* v. *Yegen*, 49 Mont. 101, 140 Pac. 231; *Harmon* v. *Fox*, 31 Mont. 324, 78 Pac. 517; *County of Silver Bow* v. *Davies*, 40 Mont. 418, 107 Pac. 81; *Woodward* v. *Melton*, 58 Mont. 594, 194 Pac. 154; *Griffiths* v. *Thrasher*, 95

Mont. 210, 26 Pac. (2d) 995; *Connelly Co.* v. *Schlueter Bros.*, 69 Mont. 65, 220 Pac. 103; *Ray* v. *Divers*, 72 Mont. 513, 234 Pac. 246; *Gotzian & Co.* v. *Norris*, 89 Mont. 307, 297 Pac. 489), and liberal construction of a pleading is enjoined by section 9164, Revised Codes "with a view to substantial justice between the parties." To hold plaintiff's pleadings do not allege misrepresentation, deceit, or fraud would no doubt comply with the exacting views of the strict technician who permits the forms of law to obscure the cause, but such holding utterly disregards the liberal rules enjoined by the statute and adhered to by this court in the numerous decisions cited — and if applied here would permit overnice technicalities to defeat the ends of justice. I am convinced fraud may be fairly inferred from the facts alleged. Furthermore in any action where fraud is in issue I am strongly inclined to hold to the pronouncement of this court in *State ex rel. Sparrenberger* v. *District Court*, 66 Mont. 496, 509, 214 Pac. 85, 88, 33 A. L. R. 464, where it is said, "Fraud cuts down everything. The law sets itself against fraud to the extent of breaking through almost every rule, sacrificing every maxim, getting rid of every ground of opposition. The law so abhors fraud that it will not allow technical difficulties of any kind to interfere to prevent the success of justice, right and truth."

The consideration received by the plaintiff, if any, is such as to shock the conscience and give rise to the presumption of fraud by implication. In such circumstances fraud may be shown by direct or circumstantial evidence or by both. (*Deepwater Council* v. *Renick*, 59 W. Va. 343, 53 S. E. 552.) And inadequacy of consideration, although not so gross as to shock the conscience and amount to proof of fraud, may nevertheless be considered with other circumstances in determining the existence of fraud. As illustrations of these views, it was held in the case of *Great Western Oil Co.* v. *Carpenter*, supra, that a consideration of $1, recited as paid in an oil and gas lease, and in fact paid, was a mere nominal consideration which was insufficient to support the contract. In *Lowe* v. *Trundle*, 78 Va.

65, it was held that mere inadequacy of consideration is not of itself sufficient for rescission of a contract unless so gross as to shock the conscience and astound the judgment of a man of common sense, in which case it will of itself create a presump-tion of fraud. In *Blake* v. *Blake,* 7 Iowa, 46, 47, it was held that where the inadequacy of consideration is so gross as to create a presumption of fraud, the contract founded thereon will not be enforced. In 2 Devlin on Real Estate, third edition, page 1469, it is said: "There must either be actual fraud or a fiduciary relation must exist to render inadequacy of considera-tion a ground for setting aside a deed. But if the inadequacy is so gross as to shock the conscience, a court will be justified in setting aside a deed." In *Howard* v. *Turner,* 125 N. C. 107, 34 S. E. 229, the supreme court of North Carolina held that the want of consideration may be shown as evidence of fraud, al-though the lack of consideration does not of itself constitute fraud. In *Krause* v. *Stevens,* 103 Neb. 463, 172 N. W. 245, the supreme court of Nebraska held that the consideration for a con-veyance of a valuable interest in real estate must itself have some value, and if it is merely nominal, and there are indica-tions of fraud or concealment of essential facts, equity will can-cel such conveyance. In *Grace* v. *Callahan,* 189 Iowa, 213, 178 N. W. 520, 523, the supreme court of Iowa said that "fraud is often difficult to prove, and is seldom established by the admis-sions of the party or by positive testimony alone. It may be, and usually is, to be found in the circumstances and the results of the transactions. * * * The trail of fraud is not always easily followed, and while the law charitably prefers to sustain all business transactions which are reasonably explainable on the theory of fairness and honesty of all parties concerned, yet courts are not at liberty to ignore clear and convincing indicia of bad faith, or refuse to draw inferences of fraud from circum-stances which irresistibly point to that result.' " And it has been held, in substance, in many other cases, that mere inade-quacy of consideration is not a distinct ground for equitable relief against the obligation of the deed, unless the inadequacy

of price is so gross and palpable as to amount in itself to proof of fraud. (*Huiller* v. *Ryan*, 306 Ill. 88, 137 N. E. 484; *Trackwell* v. *Irvin*, 66 Ind. App. 5, 115 N. E. 807; *Douglas* v. *Ogle*, 80 Fla. 42, 85 So. 243; *Walker* v. *Bourgeois*, 88 N. J. Eq. 124, 102 Atl. 250; *Ravany* v. *Equitable Life Assur. Soc. of U. S.*, 26 N. M. 514, 194 Pac. 873; *De Yulio* v. *Brownell*, 107 Or. 651, 215 Pac. 576; *Howland* v. *Day*, 125 Wash. 480, 216 Pac. 864; *Dold Packing Co.* v. *Doermann*, (C. C. A.) 293 Fed. 315.)

Doubt as to the merits of defendant's position here arises from another source. Section 7533, Revised Codes 1935, provides: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." This statute has been construed in numerous cases by this court (*Dodd* v. *Vucovich*, 38 Mont. 188, 99 Pac. 296; *Lyon* v. *Dailey Copper, M. & S. Co.*, 46 Mont. 108, 120, 126 Pac. 931; *Smith* v. *Hoffman*, 56 Mont. 299, 184 Pac. 842; *United States Nat. Bank* v. *Chappell*, 71 Mont. 553, 568, 230 Pac. 1084; *United States Bldg. etc. Assn.* v. *Gardiner*, 87 Mont. 586, 289 Pac. 555; *United States B. & L. Assn.* v. *Burns*, 90 Mont. 402, 416, 4 Pac. (2d) 703; *Orem* v. *Hansen Packing Co.*, 91 Mont. 222, 7 Pac. (2d) 546) and in many other jurisdictions; 5 New Cal. Dig., p. 370; 6 Cal. Jur. 298; 4 Cal. Jur. Supp. (1926–1936), p. 106; 6 R. C. L. 1840; *Joy* v. *City of St. Louis*, 138 U. S. 1, 36, 38, 11 Sup. Ct. 243, 34 L. Ed. 843; *McNeill* v. *Pappas*, 74 Cal. App. 591, 241 Pac. 897).

In view of the fact that the lease and mineral deed were given at the same time and between the same parties and relating to the same subject-matter, it appears to me that they constitute one agreement or at least must be construed together. But even if this were an erroneous conclusion, the deed provides on its face that it was made subject to the lease. Obviously it was executed subsequent to the lease, although both were made the same day, and when the plaintiff made the deed he was conditionally divested of title to all the oil and gas in the land except the 12½ per cent. reserved, and, consequently, if the deed conveyed anything, it could only be 25 per cent. of the 12½ per

cent. reserved by the plaintiff. It is obvious that when plaintiff on his demand got the lease removed from the records in 1931 he believed such release cleared his title from both instruments, and if the two instruments constitute one contract the release of the lease ipso facto nullified the deed. The contention of defendant that when the lease was eliminated the deed then became operative to vest in the defendant a fee-simple title to a one-fourth interest in all the oil and gas in the plaintiff's land is utterly repugnant to good conscience and equity. This is adverted to in another place.

Finding No. 8 that the plaintiff's action is barred by section 9015, Revised Codes, is error. If it may be said that defendant has any estate or interest in plaintiff's land, a question left in doubt by the record, such interest, being of an undivided nature, would constitute the parties here tenants in common. "An interest in common is one owned by several persons, not in joint ownership or partnership." (Sec. 6682, Rev. Codes.) Section 9015 has been construed to determine title by prescription (*Stett-heimer* v. *City of Butte*, 60 Mont. 111, 198 Pac. 455; *Thompson* v. *Chicago etc. R. Co.*, 78 Mont. 170, 253 Pac. 313), founded, of course, upon adverse possession. This section was taken from section 318 of the Code of Civil Procedure of California.

The supreme court of California, in construing their section 318, has said that adverse possession is necessary to set the statute of limitations running in favor of one tenant in common against his cotenant in common, and the decisions of that court in *Unger* v. *Mooney*, 63 Cal. 586, 49 Am. Rep. 100; in *Miller* v. *Myers*, 46 Cal. 535; in *Pacific Gas & Electric Co.* v. *Crockett Land & Cattle Co.*, 70 Cal. App. 283, 289, 233 Pac. 370; in *Barrow* v. *Simon*, 2 Cal. App. (2d) 500, 38 Pac. (2d) 197, and others are in full accord with the rule laid down by this court on tenancy in common in *Le Vasseur* v. *Roullman*, 93 Mont. 552, 20 Pac. (2d) 250, 252, where it is said: "Now 'one of the incidents of tenancy in common is that each of the co-tenants is entitled to the exclusive possession of the entire property as

against the whole world, except his co-tenants.' (*Hopkins* v. *Noyes*, 4 Mont. 550, 2 Pac. 280, 283.)

" 'All acts done by a cotenant and relating to or affecting the common property, are presumed to have been done by him for the common benefit of himself and the others. The relation between him and the other owners is always supposed to be amicable rather than hostile; and his acts are therefore regarded as being in subordination to the title of all the tenants, for by so regarding them they may be made to promote the interests of all. Therefore, as a general proposition, the entry of one co-tenant enures to the benefit of all.' (Freeman on Cotenancy, 2d ed. sec. 166.) 'And, supported by the same reasons, and prevailing to the same extent, is the rule that the continuing possession of a cotenant, whether the entry was made by himself or in connection with his companions, is the possession of all the cotenants.' (Id., sec. 167.)

"However, one tenant in common may oust his cotenant and make his possession adverse. But, as prima facie the possession of every cotenant is presumed to be by virtue of his title, and not in hostility to the rights of his cotenants, whoever asserts the remedy, to the granting of which the fact of ouster is a prerequisite, must first remove this prima facie presumption. (Id., sec. 222.) In order to sustain the claim that he has obtained title by adverse possession, the claimant must show that his cotenants had sufficient notice of his exclusive and hostile claim.

" 'It may be stated as the rule, that in all cases the co-tenant must have knowledge of the ouster or disseizer before an adverse possession can be alleged against him. The knowledge must be either brought home to him, or the occupier must make his possession so visibly hostile, notorious and adverse, as to justify an inference of knowledge on the part of the tenant sought to be ousted or disseized, and of laches on his part, should he, under such circumstances, fail to assert his rights.' (*Northrop* v. *Marquam*, 16 Or. 173, 18 Pac. 449, 459; and see

*Weshgyl* v. *Schick,* 113 Mich. 22, 71 N. W. 323; *Baily* v. *Trammell,* 27 Tex. (317) 328; 38 Cyc. 23.)

"The proof in this case is wanting as to an adverse, which is equivalent to a hostile, holding. There is nothing to show that plaintiff ever 'hoisted his flag' or otherwise gave notice to his cotenants that he made any claim to the land except as their cotenant. Indeed, the testimony is barren of any suggestion that he ever denied their title to or rights in the property. Clearly the plaintiff was not entitled to recover upon the proof adduced."

In the action at bar the defendant never had actual possession; the defendant never "hoisted its flag" or otherwise gave notice of its hostile claim, and consequently, plaintiff's rights were not barred by the provisions of section 9015, and for the same reasons he was not estopped in this action on the ground of laches.

Let it be remembered that by a long line of decisions by this court, in controversies that arise between the landowner and a holder of oil and gas leases, the contracts must be construed liberally in favor of the former. (*Thomas* v. *Standard Dev. Co.,* 70 Mont. 156, 224 Pac. 870; *Solberg* v. *Sunburst Oil & Gas Co.,* 73 Mont. 94, 235 Pac. 761; *McDaniel* v. *Hager-Stevenson Oil Co.,* 75 Mont. 356, 243 Pac. 582; *Solberg* v. *Sunburst Oil & Gas Co.,* 76 Mont. 254, 246 Pac. 168; *Bowes* v. *Republic Oil Co.,* 78 Mont. 134, 252 Pac. 800, 802.) The policy of the court is expressed in the last-mentioned case, where it is said, "it must be remembered that such leases as this are executed for the purpose of having lands explored, tested, and drilled to determine whether oil and gas may be found therein. * * * While forfeitures are not usually favored in the law, * * * forfeitures are here favored rather than frowned upon."

The parties respectively pray for a decree quieting title according to their respective claims; the equities are clearly with the plaintiff, but on account of the exclusion of evidence heretofore mentioned as error, plaintiff has not presented a record that clearly entitles him to the decree prayed for; on the other

hand, to quiet defendant's title on the record before us would work a manifest injustice. Before quieting title in any litigant he must show his right to such relief irrespective of the weakness of the title of his adversary. (*Borgeson* v. *Tubb,* 54 Mont. 557, 172 Pac. 326.) It appears to me that the majority in holding that the defendant took 25 per cent. of plaintiff's oil and gas in place, by the deed have misconstrued the decisions of this court and others in cases such as *Broderick* v. *Stevenson Consol. Oil Co.,* 88 Mont. 34, 290 Pac. 244. In that case royalty was sold outright for a substantial consideration with provisions in the contract that if the lease outstanding were canceled or forfeited the royalty vendee should have title to a certain percentage of the oil and gas in place in the land. In all such cases that I have found or read the grantee of the royalty interest was not a party to the outstanding lease, but a stranger thereto and in no way responsible for the development of the land. Here the lease and deed were taken by the same party at the same time covering the same land; the lessee was vested with exclusive power to develop or not develop the land under the lease for five years, and could renew the grant for an indefinite period thereafter by paying the plaintiff $1 per year; the defendant elected not to drill and develop the land; it held a deed to 25 per cent. of all plaintiff's oil and gas, if the defendant's construction of the agreement is to be accepted, and *if the lease were allowed to lapse, be canceled or forfeited,* defendant would be the owner in fee of 25 per cent. of the oil and gas without costs to it other than the munificent consideration of $1 and a unit in the trust which, so far as the record shows, was worthless. If no fraud were intended when the lease and deed were obtained from the plaintiff, it is nothing short of astounding how wonderfully advantageous the arrangements turned out in the interest of the defendant and how disadvantageous to the plaintiff. Defendant obviously drew the contract or contracts and if an ulterior purpose were ever revealed in a contract where fraud was not clearly shown the contracts involved here are monuments to the ingenuity of the draftsman.

It was clearly to the advantage of the defendant to allow the lease to be canceled or forfeited and that, by its own dilatory tactics, it permitted to come about. These facts alone are amply sufficient to bar the defendant from any right to relief in a court of equity. "He who seeks equity must do equity."

Whether any fraud were intended by the defendant at the inception of the arrangements or not is immaterial; it permitted a fraud to be perpetrated by a contract of its own making and should not be allowed, by a decree of this court, to profit by it.

Adverting to decisions relating to the sale of royalties and the distinction between such cases and the action at bar, a case involving facts more nearly similar to those involved here of any I have found is that of *Crowder* v. *James*, 110 Okl. 214, 236 Pac. 891. In that case the landowner, Polly Barnett, executed an oil and gas lease to "Crowder and Turner and * * * Bernard"; drilling was to be commenced within one year, and if not so commenced certain rentals were to be paid within the year to continue the grant in force. On the same day the lessor executed to the same parties "a purported assignment" of a one-half of royalties in the same land; Bernard assigned his interest in the lease and royalties to other parties and they in turn again assigned to the defendants, who were the appellants in the higher court. Polly Barnett the same day she gave the lease and assigned the royalties to defendants gave one Dickson, grantor of the plaintiff James, respondent on appeal, a conveyance of all her royalty in the land and some months later a warranty deed thereto. James brought an action to quiet his title, he and his grantor having been in possession all the time; the defendants did nothing to develop the land for oil and gas and their lease expired on failure to pay rentals, in one year; defendants claimed that the assignment of royalty to them "conveyed absolutely the interest specified therein" irrespective of the lease. The court said, "Since defendants, by their omissions, had permitted said lease to lapse; their assignment of the royalty interest, ipso facto, became void."

The judgment in the action at bar should be reversed and re-manded, with instructions to grant plaintiff a new trial.

Mr. Chief Justice Sands, Dissenting:

This is an action in equity wherein both plaintiff and defendants seek to have the title to certain presumed oil-bearing land in Glacier county quieted. The plaintiff claims title by virtue of possession and title deeds. There is no dispute about the title in plaintiff preceding the negotiations recited herein. The defendants claim title by virtue of a deed of a one-fourth interest in the minerals made to the Northland Petroleum Consolidated which is now presumably in their possession. The plaintiff denies the deed upon the ground that it was procured by misrepresentation and without consideration, and particularly that the grantee is not a corporation or other legal entity. The defendants claim that the Northland Petroleum Consolidated is a common-law trust and that the trustees named as defendants are the trustees of such trust. In brief language, the defendants claim title to a quarter interest in the oils in this particular land by a deed to a common-law trust, the trustees not being named in the deed and for a consideration to consist of a unit in the common-law trust. The plaintiff claims the unit was the only consideration, and that it was never delivered but was tendered fourteen years later, about the time the suit was brought.

Points argued are with respect to the authority of the trust to take title to real property in view of our corporation law, and, second, the validity of the consideration based upon a unit in the common-law trust. In view of the divergence of the opinions of the members of this court, and the fact that hundreds of titles in the oil-bearing sections of the state will be affected by this decision, we extend this opinion beyond the usual length in order to attempt to clarify the situation in respect to the title to this land and hundreds of other tracts dependent upon the same character of title throughout the state.

The Montana Constitution, section 18, Article XV, provides: "The term 'corporation,' as used in this Article, shall be held and construed to include all associations and joint stock companies, having or exercising any of the powers or privileges of corporations not possessed by individuals or partnerships; and all corporations shall have the right to sue, and shall be subject to be sued in all courts in like cases as natural persons, subject to such regulations and conditions as may be prescribed by law." And section 2, Article XV, provides: "No charter of incorporations shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal or reformatory corporations as are or may be under the control of the state; *but the legislative assembly shall provide by general law for the organization of corporations* hereafter to be created; provided, that any such laws shall be subject to future repeal or alteration by the legislative assembly."

The statutes of the state, beginning with section 5900, Revised Codes, and the chapters immediately following pertaining to corporations provide the manner for the organization of corporations specified in the Constitution, and the penal statutes, sections 4026 and 4049, provide the penalty for the violation of the Blue Sky Law. Sections 4026 to 4055, known as the Blue Sky Law, define them and provide the penalties for their violation.

The declaration of the Northland Petroleum Consolidated defines itself as a common-law trust, and the procedure in filing what is known as a declaration of trust and recording it, leaves no doubt that the organizers of this association considered it a common-law trust, and not a corporation. Strange as it may be, the trust even copies in its declaration of trust the language of a portion of section 18, Article XV of the Constitution, and the district court found that the Northland Petroleum Consolidated was a corporation, and also that it was a common-law trust—findings diametrically opposed. We have, then, first to consider whether this organization can be a corporation and a common-law trust and partake of the requisites of both.

To meet the requirements of the corporation laws, the company must bring itself within the rules fixed by the laws of the state for the organization of corporations. The term "corporations," as used in the above Article, shall, as stated therein, include all associations and joint stock companies having powers and privileges not possessed by individuals or partnerships, and it is provided that corporations may sue and be sued in their corporate names. The language itself would seem to be amply sufficient to include joint stock companies. The language of section 2, Article XV of the Constitution, which provides that the legislative assembly shall provide by general law for the organization of corporations thereafter to be created, directs the enactment of laws to provide the process of incorporation and rules governing the corporations after organized. The language of the laws providing for corporations very definitely fixes the purposes for which corporations may be organized and their powers after incorporation. These laws are also very definitely inclusive and exclusive.

From a very general reading of the declaration of trust filed by this organization, the laws regarding the organization of corporations are purposely disregarded as not governing this organization. For instance, the shareholders are designated as unit holders instead of stockholders. The trustees are not designated as officers of the company, but as trustees, to hold office during the balance of their natural lives. Vacancies are filled by election of the surviving trustees. The stockholders are designated as beneficiaries and have virtually no authority to superintend or direct the management of the trust property. We therefore face the very conflicting problem of a corporation versus a trust.

The Constitution having defined a corporation and the facts of this corporation, coming squarely within the language of the Constitution, would seem necessarily to make it a corporation and subject to corporation laws, if it be an entity. It is conceded by all that no attempt was made to comply with the requirements for the organization of the corporation. Therefore

the "Northland Petroleum Consolidated" is not a legal entity (under the Constitution and the law which is conceded even though so found by the district judge), and could not take title as a legal entity under the name of the association. The officers, having violated the requirements of corporation officers, were guilty under the general law and the Blue Sky Law in particular, and under the penal laws of the state pertaining to the duties of corporation officers—sections 4026, 4027 and 4049, Revised Codes, classifying such acts as a felony.

It is contended that the grantee, Northland Petroleum Consolidated, may be considered as a fictitious name of a group of individuals, and therefore the deed in question was a valid conveyance to these individuals under the fictitious name. Justice Anderson in his opinion suggests that these individuals were the real owners of the property so long as they could be identified. There is absolutely no attempt made in the record to identify the beneficial owners as the grantees. The district court in its finding No. 6 said: "That the defendants, Martin Jacobson, C. E. Frisbee, John F. Lindhe, Daniel Whetstone and Bruce R. McNamer, as trustees of said defendant, Northland Petroleum Consolidated, a common law trust, dealt with said plaintiff under the name Northland Petroleum Consolidated, and that under the terms of the declaration of trust heretofore referred to, and under the provisions of law applicable, said trustees had the right to assume such name under which to conduct the business of the said defendant, Northland Petroleum Consolidated, a common law trust." Here he finds that the trustees, naming them and Bruce R. McNamer, had the right to assume such name and had received the property under such name. And in finding No. 7 the court said: "That the plaintiff, Edwin Hodgkiss, in conveying said real estate as heretofore described to the defendant, Northland Petroleum Consolidated, a common law trust, dealt with said defendant as a legal entity capable of transacting business, and received from said defendant a valuable consideration for such conveyance, and that said plaintiff is therefore estopped from denying the legality of the existence

of said defendant, Northland Petroleum Consolidated.'' The district court held that the existence of the entity was conceded and the plaintiff was estopped from denying its existence under the name used by him as the grantee in the deed. If the grantee is not a legal entity, it cannot take title to property in such name, and a concession by the grantor was impossible and ineffective for any purpose.

Furthermore, the identity of the grantees (as trustees and beneficiaries) of such trust is even in the record left very much in doubt, since the alleged trustee, Bruce R. McNamer, does not appear to be a trustee under the declaration of trust, and no proof whatever appears in the record to show that he ever became a trustee. If the title merely passed to the trustees to the exclusion of the other beneficiaries, it might otherwise be determined that the identity of the grantees was possible, but if it includes all the beneficiaries of the trust, as shown by the records of the company, then the identity of each beneficiary would be very difficult, indeed impossible, to determine, since the unit holders were permitted to sell their units without the formalities of a deed, and no change of title would exist when made if it was a transfer of real property, as the records in the office of the secretary of the trust did not attempt to show the date of the attempted transfer by the parties. It would only show the date of the attempted transfer, without description of the land, filed with the secretary's records. The time of the delivery of the unit representing the beneficiaries' interest would be the true date of the transfer of the property. Therefore, if indeed a transfer from one beneficiary could be effected in such informal way—manifestly an impossibility—the statement in the majority opinion that the true parties to whom the conveyance was made could be easily identified is incorrect.

The true purpose of a common-law trust necessitates the existence of a trustor, a trustee, and a beneficiary at the time of the creation of the trust. The status of the parties by name must be identified in the declaration of trust, as well as the property that is placed under the trust. The declaration must

be in writing. (Sec. 6784, Rev. Codes.) A modification of the relation of the parties to the trust would require an amendment of the declaration; otherwise the declaration would be of little purpose. This declaration attempts to authorize a change of the trustors, a change of the trustees, and a change of the beneficiaries, each without reference to the other. It clearly appears to go far afield from the original purpose of creating a trust and violates the fundamental principles of trust relationship. To prevent just such attempts and restrict trust relationship to its true púrpose, our statute, section 6783, provides: ''Uses and trusts in relation to real property are *those only* which are specified in this chapter.'' And section 6784 provides: ''No trust in relation to real property is valid unless created or declared: 1. By a written instrument, subscribed by the trustee, or by his agent thereto authorized by writing; 2. By the instrument under which the trustee claims the estate affected; or 3. By operation of law.'' And section 6787 further provides: ''Express trusts may be created for any of the following purposes: 1. To *sell* real property, and apply or dispose of the proceeds in accordance with the instrument creating the trust; 2. To mortgage or lease real property for the benefit of annuitants or other legatees, or for the purpose of satisfying any charge thereon; 3. To receive the rents and profits of real property, and pay them to or apply them to the use of any person, whether ascertained at the time of the creation of the trust or not, for himself or for his family, during the life of such person, or for any shorter term, subject to the rules of sections 6723 to 6759 of this code; or, 4. To receive the rents and profits of real property, and to accumulate the same for the purposes and within the limits prescribed by the sections above enumerated.'' These three sections clearly limit the scope of trust organization and authority. If attempt be made to avoid the organization requirements or exceed the authority therein, the attempt is void.

Here the original declaration becomes a nullity when new parties are attempted to be included in the trust without a new

declaration. The same may be said of the attempted inclusion of additional beneficiaries who by this attempted practice of deeding the common trust property become new trustors. The corporation is the modernized trust evolved to make more practical the conveyance to the corporation as an entity, rather than to the trustees who frequently die or are otherwise replaced by court procedure. Because of the many frauds and legal entanglements arising from trusts, they are now by statutes strictly construed and the limitation of section 6783, supra, and such trusts in relation to real property are of those only which are specified in the chapter, two sections of which are quoted and are provisions inserted to limit the authority of trusts.

Looking at section 6784, above, we notice that the trust relation is created by declaration which must be in writing and circumscribe the authority of the trustees. Section 6787 defines the purposes, which are specified in four subdivisions therein. We notice the first subdivision authorizes the trust to "*sell* real property." No mention is made anywhere of a purpose to buy real estate. That omission is significant. If it was intended to authorize the purchase of property by the trust, it would follow immediately as an alternative. The next subdivision authorizes the trust to *mortgage* or *lease* real property, and the next to *receive rents* from real property. It is therefore apparent that it is inconsistent with the statutory law for the creation of a trust to permit later purchases of property not specified in the declaration. This would seem very appropriate, since if the declaration is to be in writing, it would have to specify the property and the beneficiaries and later additions of property or of beneficiaries. Without a new declaration, it would make it possible to avoid the purpose of the declaration and thereby obviate a very essential provision of the statute relating to trusts.

The right of common-law trusts, sometimes called "Massachusetts Trusts," to displace corporations has been construed under Constitutions in language similar to our own in the states of Kansas, Washington, Pennsylvania and particularly Arizona,

as well as the United States. (*Reilly* v. *Clyne*, 27 Ariz. 432, 234 Pac. 35, 39, 40 A. L. R. 1005.) The Arizona case arose from an attempt to collect a note given in payment of a so-called unit of stock in a common-law trust. The language is there so pertinent that we copy very generously from that decision as follows:

It is not necessary to consider what might be the effect of the conduct of defendant by way of estoppel if the transaction out of which the note grew had not been in violation of positive law, and we therefore do not enter into that aspect of the case. The contract, being in violation of law, was incapable of ratification. It is next contended that the state alone can question the legality or capacity of the plaintiffs, and in support of this contention cases are cited holding that *ultra vires* transactions of corporations may be questioned by the state only. This rule has no place in a transaction of the kind we have here. (10 R. C. L. 801, sec. 112; *Melody* v. *Great N. R. Co.*, 25 S. D. 606, 127 N. W. 543, Ann. Cas. 1912C, 727, 30 L. R. A. (n. s.) 568.)

"It is also contended that the defendant and the plaintiffs were *in pari delicto,* and that therefore the court should wash its hands of this whole matter. The facts disclosed by the pleadings are that the plaintiffs in their collective name of the International Investment & Construction Association sold to the defendant 5,000 units or shares of the association's stock. As we have found, this the plaintiffs had no right to do, not having complied with the Blue Sky Laws. Paragraph 2070, supra, makes the act of the plaintiffs in selling or offering to sell stock of the association a misdemeanor. It does not, however, impose any penalty upon one purchasing such stock. The wrong and the penalty both attach to the seller, not to the buyer. Unquestionably the general law is that a party to an illegal contract cannot come into court and ask to have his illegal objects carried out, but where the parties are not *in pari delicto,* and where the law which makes the agreement unlawful was intended for the special protection of the one seeking relief, the rule is different. (9 Cyc. 550.) As is said in *Tracy* v. *Talmage,* 14 N. Y. 162, 67 Am. Dec. 132: ' * * * It is safe to assume that, whenever

the statute imposes a penalty upon one party and none upon the other, they are not to be regarded as *par delictum.* * * * And it is very material that the statute itself, by the distinction it makes, has marked the criminal, for the penalties are all one one side.' * * * The purpose of the Blue Sky Laws is to protect the public against imposition. The defendant was one of the public for whose benefit the law was enacted, and it is said in *Browning* v. *Morris,* 2 Cowp. 790, where a law is enacted 'for the sake of protecting one set of men from another set of men * * * there the parties are not *in pari delicto.*' The rule thus announced has been recognized and enforced in the following cases: *Irwin* v. *Curie,* 171 N. Y. 409, 64 N. E. 161, 58 L. R. A. 830; *American Nat. Ins. Co.* v. *Tabor,* 111 Tex. 155, 230 S. W. 397; *Inhabitants of Worcester* v. *Eaton,* 11 Mass. 368; *Ferguson* v. *Sutphen,* 8 Ill. (3 Gilman) 547; *Gray* v. *Roberts,* 2 A. K. Marsh. (Ky.) 208, 12 Am. Dec. 383; *Knowlton* v. *Congress & Empire Spring Co.,* 14 Fed. Cas. 797 (Case No. 7,903).''

In conclusion of this feature of the case I say most emphatically that common-law trusts are not authorized by the Constitution and laws of the state of Montana, except as definitely provided by sections 6783 to 6797, Revised Codes.

I next consider the question of consideration for the deed. There is no question that the deed presumes a consideration, but that is a rebuttable presumption. (Sec. 7512, Rev. Codes.) The plaintiff in his testimony very definitely stated that he received no consideration for the execution of the deed. Our statute, section 10505, provides: ''The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason.'' That testimony was not disputed, except, possibly, by the inference arising from the testimony elicited from the plaintiff that he was to get one unit of the trust. The burden of proof was originally on the plaintiff. His statement that he received no consideration for the deed shifted the burden. In the law of Presumptive Evidence, by Lawson, page 660, rule 120, we note: ''A rebuttable presumption of law being contested by proof of facts showing otherwise,

which are denied, the presumption loses its value, unless the evidence is equal on both sides, in which case it should turn the scale. * * * It has been said the presumptions of law derive their force from *jurisprudence* and not from *logic*, and that such presumptions are arbitrary in their application. This is true of irrebuttable presumptions, and, primarily, of such as are rebuttable. It is true of the latter until the presumption has been overcome by proofs and the burden shifted; but when this has been done, the conflicting evidence on the question of fact is to be weighed and the verdict rendered, in civil cases, in favor of the party whose proofs have most weight, and in this latter process the presumption of law loses all that it had of mere arbitrary power, and must necessarily be regarded only from the standpoint of logic and reason, and valued and given effect only as it has evidential character." Under this authority, which is very respectable and nowhere disputed, the probative value of the presumption of the deed is almost worthless, as it does not pretend to state any consideration except the $1, and it is admitted that payment of that sum, or any other sum, was not made. The defendants were therefore required to prove a consideration for the deed. In order to do so it must prove a valid payment or tender of property in developing—a consideration—or, in lieu thereof, a tender of property of value. The defendants proved, and it was not disputed, that they tendered one unit of stock in the Northland Petroleum Consolidated, in the language expressed in the unit exhibit, at about the time the suit was commenced. No attempt was made by the defendants to prove that the unit had any value. The attempt of the plaintiff unnecessarily to show that the unit had no value was frustrated by the objections of the defendants' attorney, sustained by the court over the exception of the plaintiff. The mere tender of the unit in the trust by defendants, without showing value, would be fruitless as a proof of tender of a consideration. The tender, however, was ineffective for the further reason that it contained a reservation unauthorized by the terms of the contract of sale. The terms of the contract provide that

the plaintiff was to have one unit of the 1,000 units held by the company. There were no conditions attached, but in the unit tendered to plaintiff, the reservation that the unit was "subject to the provisions of the *first minutes of the company*" was a condition that warranted the plaintiff in refusing to accept it. The declaration of the trust provided that before any unit certificate should be issued, "the holder shall *signify in writing* that he is fully conversant with the terms of this declaration of trust," which must be prior to and contemporaneous with the issuance of the trust unit. The plaintiff never did in writing, or otherwise, assent to the condition in the declaration. Therefore the *tender* of the unit of stock was unavailing for the purpose of showing a consideration. It may be noted further that, by the declaration of the trust, the trustees *shall have the power to decline and refuse to further perform the terms and conditions of any of them* specified in any of the agreements. The deed was executed at the same time and is a part of the same agreement as a lease between the same parties; and if the trustees had such power of nullifying any of the agreements of which this is one, then it was not an enforceable contract; in fact, not a contract at all, and thus again the tender of a unit of stock in such an organization was worthless and not sufficient to support proof of consideration. Other provisions of the declaration of trust, such as the provision taking from the beneficiaries all control of the property during the life of any of the trustees, and for twenty years thereafter, were of such a character, so unreasonable on their face, that no sensible man would approve, and I feel confident this plaintiff would never approve the declaration of trust when he learned of its unreasonable provisions practically eliminating him from the control of his property for many years to come. Such provision directly violated the positive statute, above.

In the commonly designated "Blue Sky Laws," section 4026 provides as follows: "That name 'investment company' as used in this Act shall include: All domestic and foreign corporations, whether incorporated or unincorporated, associations, joint

stock companies, partnerships, firms, trusts, common law companies, syndicates, pools, or any other form of organization or association, organized or proposed to be organized, except as otherwise provided in this Act, who shall sell, attempt to sell, or negotiate for the sale of, or of taking subscriptions for any stock, bonds, units or shares, or debentures, evidence of indebtedness, certificates of interest or participation, certificates of interest in profit sharing agreement, collateral trust certificates, contracts of interest, diversified trustee shares, fixed investment trusts, selected shares corporations, investment contracts, or contracts for the performance of personal services or the furnishing of materials in connection with the burial or cremation of dead human bodies, which contracts are to be performed at a future time determinable only by the death of the person in connection with whose decease said services are to be performed or materials furnished, contracts or agreements or securities of any kind or character, to any person or persons in the state of Montana.''

The declaration of trust provides that the trustee shall have power to ''draw, accept, endorse, execute, pay, buy, sell and discount promissory notes, drafts, bills of exchange, bonds, warrants, debentures, and any and all other negotiable and non-negotiable evidences of indebtedness of whatever nature, including shares of capital stock of private or public corporations, or certificates representing units in common law trusts or other organizations.'' It therefore appears to a certainty that this trust organization far exceeded its powers and violated the provisions of the Blue Sky Law. Its contracts and its offer to transfer to the plaintiff herein as a consideration for the deed therefore violated the Blue Sky Law. The punishment is a felony and a fine of not to exceed $1,000. This invalid consideration or proposed consideration is treated at great length in the case of *McManus* v. *Fulton*, 85 Mont. 170, 278 Pac. 126, 130, 67 A. L. R. 690. The decision is written by the then Chief Justice Callaway, the attorney for the defendants in this case, respondents here, and concurred in by Justices Angstman and Matthews.

I quote rather at length, in view of the importance of the instant case and the very pertinent declarations of that decision:

" 'A contract directly and explicitly prohibited by constitutional statute in unmistakable language is absolutely void. That has never been judicially doubted and is unanimously conceded.' (6 R. C. L. 701.) 'A contract expressly prohibited by a valid statute is void.' This proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts. (*Botkin* v. *Osborne*, 39 Ill. 101; *Wells* v. *People*, 71 Ill. 532; *Board of Education* v. *Arnold*, 112 Ill. 11, 1 N. E. 163; *Penn* v. *Bornman*, 102 Ill. 523; *Cincinnati Mutual Health Assur. Co.* v. *Rosenthal*, 55 Ill. 85, 8 Am. Rep. 626; *Borough of Milford* v. *Milford Water Co.*, 124 Pa. 610, 17 Atl. 185, 3 L. R. A. 122; *Berka* v. *Woodward*, 125 Cal. 119, 57 Pac. 777, 45 L. R. A. 420, 73 Am. St. Rep. 31; *Levinson* v. *Boas*, 150 Cal. 185, 88 Pac. 825, 11 Ann. Cas. 661, 12 L. R. A. (n. s.) 575; *De Kam* v. *City of Streator*, 316 Ill. 123, 146 N. E. 550; *Duck Island H. & F. Club* v. *Edward Gillen Dock, D. & C. Co.*, 330 Ill. 121, 161 N. E. 300.) * * * Where a statute designed for the protection of the public prescribes a penalty, that penalty is the equivalent of an express prohibition, and a contract in violation of its terms is void. (*Levinson* v. *Boas*, supra; *Berka* v. *Woodward*, supra; *Goldsmith* v. *Manufacturers' Liability Ins. Co.*, 132 Md. 283, 103 Atl. 627.) * * *

"As was said in *Glass* v. *Basin & Bay State Min. Co.*, 31 Mont. 21, 77 Pac. 302, quoting from Dean Lawson's article in Cyc., p. 546: 'No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out, nor can he set up a case in which he must necessarily disclose an illegal purpose as the groundwork of his claim. * * * But it seems to be contended that plaintiff might prove his case without reference to the illegality of the contract—by the simple expedient of saying nothing respecting compliance with the Illinois law. In other words, if plaintiff told the truth, but not the whole truth, con-

cealing the fact that the contract was illegal and in violation of the Illinois Act, he might recover notwithstanding the court was advised of the Act, the violation thereof being pleaded. The law does not tolerate such sophistry and subterfuge. "Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case." (*Coppell* v. *Hall,* 74 U. S. [7 Wall.] 542, 19 L. Ed. 244; *Berka* v. *Woodward,* 125 Cal. 119, 57 Pac. 777, 45 L. R. A. 420, 73 Am. St. Rep. 31; *Levinson* v. *Boas,* supra.) 'The question is not what the defendant may plead, but what relief can the plaintiff have on the contract if the facts brought to the attention of the court by the answer be true.' (*Third Nat. Exch. Bank of Sandusky, Ohio,* v. *Smith,* supra, [17 N. M. 166, 125 Pac. 632].) 'If, from the plaintiff's own showing or otherwise, the cause of action appears to arise *ex turpi causa* or out of the transgression of a positive law of the country, then the court says he has no right to be assisted.' (*Hoffman* v. *McMullen,* (C. C. A.) 83 Fed. 372, 45 L. R. A. 410.)

"When *Hoffman* v. *McMullen* reached the United States Supreme Court, Mr. Justice Peckham, speaking for the court, said: 'The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract. In cases of this kind the maxim is *potior est conditio defendentis.* * * * Upon the point as to the ability of the plaintiff to make out his cause of action without referring to the illegal contract, it may be stated that the plaintiff for such purpose cannot refer to one portion only of the contract upon which he proposes to found his right of action, but that the whole of the contract must come in, although the portion upon which he founds his cause of action may be legal. (*Booth* v. *Hodgson,* 6 T. R. 405; *Thomson* v. *Thomson,* 7 Ves. Jun. 470; *Embrey* v. *Jemison,* 131 U. S. 336, 348 [359], [9 Sup.

Ct. 776, 33 L. Ed. 172].) * * * In the case before us the cause of action grows directly out of the illegal contract, and if the court distributes the profits it enforces the contract which is illegal.' (*McMullen* v. *Hoffman*, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117; *Kennedy* v. *Lonabaugh*, 19 Wyo. 352, 117 Pac. 1079, Ann. Cas. 1913E, 133.)

"In proving a case a party must make a full and fair disclosure of all the facts governing the transaction; he cannot prevail by presenting only such facts as favor him when, if all the facts were presented he could not prevail. Section 7506, Revised Codes 1921, provides: 'If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void.' * * *

"In *Dixie Rubber Co.* v. *Catoe*, 145 Miss. 342, 110 So. 670, it was held that a contract between a corporation, which had not complied with the law, and a salesman, respecting the sale of the corporation's stock was unlawful, void, and unenforceable. The court said: 'It seems plain that appellant would have been required to prove the contract between it and appellee Cadenhead, by which the latter received the commissions, and rely on its illegality under the law for its right to recover. The illegality of the contract would have been met at every turn in the case from start to finish; it could not have been put out of sight. It would have been the very life of the case. It could not have been shown, except by virtue of the contract itself, that appellee Cadenhead had the illegal commissions in his possession. And the only ground on which appellant could have claimed the right to recover the commissions would have been that the contract itself, by which the commissions had been paid, was illegal. Every move in the case would have depended on the illegal contract. So we are of opinion that, if appellant had sued appellee Cadenhead for the $44,000 commissions, there could have been no recovery because of the illegality of the contract by which the commissions had been paid and received.' * * *

"It is said that justice demands a judgment for plaintiff. 'What is justice?' queried Socrates. Whatever it may be, it

is not the fiat of the individual judge following his own philosophy, but is in a legal sense 'that end which ought to be reached in a case by the regular administration of the principles of law involved as applied to the facts.' (*Meeks* v. *Carter*, 5 Ga. App. 421, 63 S. E. 517; *Sioux Falls* v. *Marshall*, 48 S. D. 378, 204 N. W. 999, 45 A. L. R. 447; *Nelson* v. *Wilson*, 81 Mont. 560, 264 Pac. 679.) * * *

"A void contract cannot be enforced, no matter what hardship it may work, or how strong the equities may appear. (*Howard* v. *Farrar*, 28 Okl. 490, 114 Pac. 695.)"

It must be understood that the violation of the Blue Sky Law is not the only violation of law by this trust. The general law providing for the organization of corporations is violated in very many particulars too numerous to mention, so that it is very evident that the tender of the unit of stock in the trust was not a tender of any consideration for the deed. Such tender was, as said before, worthless and without a consideration, and the deed was void.

This declaration of trust in its entirety furnishes a very apt illustration of the necessity for a strict compliance with the laws for the creation of corporations. It is an attempt on the part of the trustees to obtain all of the advantages of a corporation and at the same time assume none of the liabilities. They do not attempt to comply with the law requiring initial filing papers, the law requiring annual statements, the law requiring the election of officers to handle the property, the law fixing the time and method of electing such officers; they in fact attempt to fix the duration of the trust as twenty years after the death of the last trustee, in direct defiance of the statute fixing the duration of a trust to a time not exceeding the life of the trustees. None but a fool, or any man wholly ignorant of the provisions of the declaration, would voluntarily subscribe to such conditions. The law should be strictly construed against such attempted evasions and the evident frauds therein attempted discouraged, or in fact punished, as provided by statute in such case.

I do not mention the presumption of title arising from the long possession of plaintiff. If the deed was without valid consideration, the plaintiff is entitled to continue that possession even though he might be held (if that were possible under the record in this case) to have been a party to the illegal acts of the Northland Petroleum Consolidated, and the courts, therefore, should refuse to take cognizance of this case on that account.

I therefore insist that the decision of the district court quieting title in the defendant trust or the trustees thereof—if, indeed, the judgment is plain enough in that particular to warrant designating it as a judgment—be set aside, and that the title of the land in controversy be quieted in plaintiff.